KRISTINA M. DIAZ (SBN 151566)
kristina.diaz@roll.com
LISA A. STILSON (SBN 196059)
lisa.stilson@roll.com
JENNA W. LOGOLUSO (SBN 266685)
jenna.logoluso@roll.com
MATTHEW C. ONYETT (SBN 295419)
Matthew.Onyett@roll.com
LAUREN BABST (SBN 313156)
lauren.babst@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:    (310) 966-8810

Attorneys for Defendants,
JUSTIN VINEYARDS & WINERY LLC
THE WONDERFUL COMPANY LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>        vs.<br><br>JUSTIN VINEYARDS & WINERY LLC, THE WONDERFUL COMPANY LLC, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. 2:22-cv-06039 PA (RAOx)<br><br>[Assigned to the Honorable Judge Percy Anderson]<br><br>**DEFENDANTS JUSTIN VINEYARDS & WINERY LLC'S AND THE WONDERFUL COMPANY LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF INTERVENOR PLAINTIFF OLIVIA BARAJAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declarations of Danny Hanson and Jenna W. Logoluso and [Proposed] Order]*<br><br>Date:      March 20, 2023<br>Time:      1:30 PM<br>Crtrm:    9A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 20, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of the above-entitled Court, located at 350 W. First Street, Los Angeles, California 90012, before the Honorable Percy Anderson, Defendants Justin Vineyards & Winery LLC and The Wonderful Company LLC ("Defendants") will and hereby do seek an order from this Court compelling Intervenor Plaintiff Olivia Barajas to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA") and to stay her claims in the action on the grounds that she entered into a valid, written agreement to arbitrate all of the claims she asserts in the above-entitled action.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Danny Hanson and Jenna W. Logoluso, all pleadings, records, and papers on file in this action, and upon such oral, documentary, and demonstrative evidence introduced at the hearing.

This motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on February 10, 2023. The parties' meet and confer efforts are described in further detail in the Declaration of Jenna W. Logoluso, filed herewith.

1    DATED:  February 17, 2023          ROLL LAW GROUP PC

2

3

4                                      By:    _/s/ Jenna Logoluso_____

5                                             Jenna W. Logoluso
                                              Attorneys for Defendants,
6                                             JUSTIN VINEYARDS & WINERY LLC
                                              THE WONDERFUL COMPANY LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................... 2

    A. Plaintiff Agreed To Arbitrate Her Employment Related Claims .......... 2

        1. Plaintiff's First Arbitration Agreement ...................................... 2

        2. Plaintiff's Second Arbitration Agreement................................... 4

    B. Plaintiff's Intervention Complaint Is In Direct Contravention of the Binding Arbitration Agreement ...................................................... 5

III. LEGAL STANDARD ................................................................................ 6

IV. ARGUMENT ............................................................................................. 6

    A. All of Plaintiff's Claims Relate to Her Employment With Justin and are Subject to Arbitration ............................................................. 6

    B. The FAA Applies to the Arbitration Agreement ................................. 7

    C. Plaintiff Agreed To Arbitrate ............................................................. 8

    D. Plaintiff Agreed To Delegate Arbitrability to the Arbitrator................ 9

    E. The Arbitration Agreement Meets Essential Elements of Fairness and Is Not Unconscionable ................................................................ 11

        1. The Arbitration Agreement Contains All of the Essential Elements of Fairness................................................................ 11

            (a) The Arbitration Agreement Specifically Provides for a Neutral Arbitrator....................................................... 12

            (b) The Arbitration Agreement Provides for More Than Minimal Discovery............................................................ 12

            (c) The Arbitration Agreement Provides for a Written Award ........................................................................... 13

            (d) The Arbitration Agreement Provides for All Types of Relief that Would Otherwise Be Available in Court ............................................................................. 14

            (e) The Arbitration Provision Does Not Require Plaintiff to Pay Any Costs, Fees, or Expenses She Would Not Otherwise Incur in a Court Action ............... 14

2.   The Arbitration Agreement Is Not Unconscionable .................. 14

(a)   The Arbitration Agreement Is Not Procedurally Unconscionable ................................................................. 15

(b)   The Arbitration Agreement Is Not Substantively Unconscionable ................................................................. 16

F.   Public Policy Supports Compelling Plaintiff's Claims to Arbitration ................................................................................. 16

G.   TWC Has Standing To Enforce the Arbitration Agreement as an Intended Beneficiary ........................................................... 17

H.   The Court Should Stay Proceedings Related To Plaintiff's Claims ......................................................................................... 19

V.   CONCLUSION ............................................................................. 19

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF OLIVIA BARAJAS

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*AT&T Mobility, LLC v. Concepcion*
    563 U.S. 333 (2011) ................................................................. 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986) ............................................................. 7, 8

*Buckeye Check Cashing, Inc. v. Cardegna* 5
    46 U.S. 440 (2006) .................................................................. 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
    207 F.3d 1126 (9th Cir 2000). ............................................. 6, 7

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003) .................................................................. 8

*Comedy Club, Inc. v. Improv W. Assocs.,*
    553 F.3d 1277 (9th Cir. 2009) ................................................. 8

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) .............................................. 18

*Cordas v. Uber Techs., Inc.,*
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ................................... 9

*Esquer v. Educ. Mgmt. Corp.,*
    292 F. Supp. 3d 1005 (S.D. Cal. 2017) ................................ 10

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*
    461 Fed.Appx. 630 (2011) ................................................... 11

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ............................................................ 8, 9

*Green Tree Fin. Corp.-Ala. v. Randolph*
    531 U.S. 79 (2000) ............................................................. 6, 7

*Henry Schein v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019) .......................................................... 10

*Khraibut v. Chahal,*
    No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. 2016) .......................... 11

*Kilgore v. KeyBank, Nat. Ass'n.,*
    718 F.3d 1052 (9th Cir. 2013) .............................................. 11

*Klamath Water Users Protective Ass'n v. Patterson*
    204 F.3d 1206 (9th Cir. 2000) .............................................. 18

*Madrigal v. New Cingular Wireless Servs.*
No. 09-CV-00038-OWW-SMS, WL 2513478 *5-8 (E.D. Cal. 2009) .......... 11

*Marchese v. Shearson Hayden Stone, Inc.*
734 F.2d 414 (9th Cir. 1984).................................................................... 7

*Mercado v. Sally Beauty Supply LLC*
No. 215-CV-02316-KJM-CKD, 2016 WL 3361883 (E.D. Cal. 2016)........... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1, 22 (1983) ...........................................................................6, 7

Mundi v. Union Sec. Life Ins. Co.
555 F.3d 1042 (9th Cir. 2009)................................................................17

*Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.,*
795 F.2d 1501 (9th Cir. 1986) ............................................................... 9

*Pang v. Samsung Elecs. Am., Inc.,*
371 F. Supp. 3d 633 (N.D. Cal. 2019) ................................................... 8

*Perry v. Thomas*
482 U.S. 483 (1987) ..........................................................................6, 11

*Qualcomm Inc. v. Nokia Corp.*
466 F.3d 1366 (Fed. Cir. 2006)..............................................................11

*Rent-A-Center W., Inc. v. Jackson,*
561 U.S. 63 (2010) ...............................................................................10

*Republic of Nicaragua v. Standard Fruit Co.,*
937 F.2d 469 (9th Cir. 1991)................................................................. 8

*Simula, Inc. v. Autoliv, Inc.*
175 F.3d 716 (9th Cir. 1999)................................................................. 6

*Wu v. Google, Inc.,*
No. 3:13-CV-1871-JSW, 2013 WL 12323920, at *2 (N.D. Cal. July 10,
2013)................................................................................................... 6

**STATE CASES**

*Abramson v. Juniper Networks, Inc.*
115 Cal. App. 4th 638 (2004)…..............................................14, 15, 16

*Armendariz v. Found. Health Psychcare Servs. Inc.,*
24 Cal. 4th 83 (2000)………………………………11, 12, 14, 15

*Binder v. Aetna Life Ins. Co.,*
75 Cal. App. 4th 832 (1999) ……………………………………… 9

*Harper v. Wausau*
    56 Cal. App. 4th 1079 (1997)......................................................................18

*Harris v. Sup. Ct.*
    188 Cal. App. 3d 475 (1986)……..…...……………………………………..18

*King v. Larsen Realty, Inc.*
    121 Cal. App. 3d 349 (Ct. App. 1981)……………………………………16

*McManus v. CIBC World Markets*
    109 Cal. App. 4th 76 (2003) ……………………………………………..15

*Malone v. Super. Ct.,*
    226 Cal. App. 4th 1551 (2014)……………………………………………10

*Stirlen v. Supercuts, Inc.*
    51 Cal. App. 4th 1519 (1997) …………………………………………15, 17

*Valson Partners Ltd. P'ship v. Calcor Space Facility, Inc.*
    25 Cal. App. 4th 809 (1994)………………………………………………17

## STATUTES

9 U.S.C. § 2........................................................................................6, 7

9 U.S.C. § 3................................................................................................6

9 U.S.C. §§ 1-2.........................................................................................8

Cal. Govt. Code § 12940 .........................................................................5

Cal. Govt. Code § 12940(H).....................................................................5

Cal. Govt. Code § 12940(k).....................................................................5

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

Pursuant to the Federal Arbitration Act ("FAA"), Defendants Justin Vineyards & Winery LLC ("Justin") and The Wonderful Company LLC ("TWC"; collectively, "Defendants") seek the entry of an order compelling Intervenor Plaintiff Olivia Barajas ("Plaintiff") to submit all of her individual claims in this case to binding arbitration and to stay all proceedings related to her claims.

When Plaintiff began working for Justin in the summer of 2015, she entered into a written agreement with the Company titled "Confidentiality, Trade Secrets and Arbitration Agreement."  This agreement contained a mandatory dispute resolution provision applicable to any and all claims arising from and/or relating to Plaintiff's employment with Justin.  The agreement required that any such claims be submitted to binding arbitration in accordance with the JAMS Employment Rules and Procedures, and specifically included claims of discrimination and/or harassment brought under Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act.  Then, in the spring of 2016, Plaintiff was offered a promotion and entered into a *second* written arbitration agreement containing terms identical to the first.  The second arbitration agreement is still in effect today.

Plaintiff acknowledged and understood the binding nature of the arbitration agreements and the arbitration provisions therein.  Nevertheless, Plaintiff now seeks to intervene in the underlying action against TWC and her former employer Justin, in direct violation of her arbitration agreement, despite the fact that the claims alleged solely relate to her employment with Justin.  For the foregoing reasons, and as will be discussed herein, Defendants request that the Court issue an order compelling Plaintiff to submit her claims to binding arbitration pursuant to the parties' agreement and for an order staying her claims in the present action.

## II.      FACTUAL BACKGROUND

### A.      Plaintiff Agreed To Arbitrate Her Employment Related Claims

Plaintiff entered into a written arbitration agreement with Justin on two separate occasions.[1]

#### 1.      Plaintiff's First Arbitration Agreement

On August 25, 2015, Justin offered Plaintiff the temporary position of Harvest Cellar Intern.  (Declaration of Danny Hanson in support of Defendant's Motion to Compel Arbitration of Intervenor Plaintiff Olivia Barajas ("Hanson Decl.") ¶ 10, Exh. 2 (08/25/2015 Offer Letter).)  Plaintiff accepted the offer and, on August 31, 2015, entered into a "Confidentiality, Trade Secrets and Arbitration Agreement" with Justin (the "First Arbitration Agreement").  (*Id.* at ¶ 11, Exh. 3 (First Arbitration Agreement).)  The First Arbitration Agreement contains an explicit arbitration provision at Paragraph 9 (the "Arbitration Provision"). The Arbitration Provision states, in relevant part:

> a. <u>Mutual Agreement to Arbitrate</u>. Both the Company and Employee voluntarily agree that ***any claim, dispute, or controversy arising out of or relating to Employee's employment with the Company or the termination of that employment shall be submitted to final and binding arbitration in accordance with the terms of this arbitration***

---

[1] Plaintiff's arbitration agreements are also the subject of motion practice in state court.  In 2019, co-Intervenor Plaintiffs Blanca Verduzco and her sister, Patricia Verduzco, brought a lawsuit against Justin alleging discrimination, harassment and wrongful termination claims under the California Fair Employment and Housing Act in San Luis Obispo Superior Court (Case No. 19CVP-0393).  Justin successfully moved to compel arbitration as to both Blanca Verduzco's and Patricia Verduzco's claims.  Those arbitrations are currently pending before JAMS.

Also in 2019, Plaintiff, Patricia Verduzco, Blanca Verduzco and another former co-worker, William Fuentes, brought a PAGA and wage and hour class action against Justin in San Luis Obispo Superior Court (Case No. 19CVP-0383).  Justin, again, moved to compel arbitration, this time before a different Judge who ultimately denied the motions.  Justin is currently appealing this ruling (Case No. B325886).

*provision*. Examples of claims, disputes or controversies that must be resolved through the process set forth in this provision rather than in court include, but are not limited to, embezzlement/conversion, disclosure of trade secrets, breach of confidentiality agreement, wage and benefit claims; contract claims; personal injury claims; claims for equitable relief; tort claims, such as claims for wrongful termination and defamation; ***discrimination and harassment claims including, without limitation, those claims brought under Title VII of the Civil Rights Act of 1964***, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the American with Disabilities Act, ***the California Fair Employment and Housing Act***, the Family Medical Leave Act, the California Family Rights Act, the Employment Retirement Income Securities Act of 1974; ***and any other employment-related claims*** of any type unless otherwise stated herein. This Agreement applies to all claims that the Company may have against Employee, as well as all claims that Employee may have against the Company, including its owners, directors, officers, employees, managers, members, agents, and parties affiliated with its employee benefit and health plans, past and present and each of them. (Emphasis added.)

g. Acknowledgement. **BY VOLUNTARILY AGREEING TO THIS ARBITRATION PROVISION, THE COMPANY AND EMPLOYEE BOTH GIVE UP THEIR RIGHTS TO HAVE DISPUTES BETWEEN THEM HEARD BY A JURY OR RESOLVED IN ANY OTHER FORUM, INCLUDING COURT.** (Emphasis in original.)

(Hanson Decl. ¶ 11, Exh. 3 (First Arbitration Agreement), ¶ 9.)  Plaintiff further acknowledged her voluntary assent to arbitration in the signed offer letter (the "08/25/2015 Offer Letter") that accompanied the First Arbitration Agreement. (Hanson Decl. ¶ 10, Exh. 2 (08/25/2015 Offer Letter).) Paragraph 5 of the 08/25/2015 Offer Letter states:

**5. WE BOTH AGREE THAT ANY DISPUTE ARISING WITH RESPECT TO YOUR EMPLOYMENT AND ANY TERMINATION OF SUCH EMPLOYMENT SHALL BE CONCLUSIVELY SETTLED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES DESCRIBED IN THE CONFIDENTIALITY, TRADE SECRETS, AND ARBITRATION**

**AGREEMENT ATTACHED HERETO.**

(*Id.* (emphasis in original).) Plaintiff signed both the First Arbitration Agreement and the 8/25/2015 Offer Letter containing the express arbitration provisions. (*See* Hanson Decl. ¶¶ 10-11, Exhs. 2 & 3 (08/25/2015 Offer Letter & First Arbitration Agreement).)

Additionally, the First Arbitration Agreement expressly includes TWC as an intended third-party beneficiary:

> b. <u>Company Affiliates</u>.  For the purposes of this Agreement, the term "<u>Company</u>" as used herein shall include JUSTIN Vineyards & Winery LLC . . . and any person, corporation, trust, partnership or other entity (including, without limitation, ***The Wonderful Company LLC***) . . . which, directly or indirectly, controls, is controlled by, or is under common control with JUSTIN Vineyards & Winery LLC . . . ."

(Hanson Decl. ¶ 11, Exh. 3 (First Arbitration Agreement), ¶ 1(b) (emphasis in italics and bold added; underlining in original).)

## 2.     Plaintiff's Second Arbitration Agreement

On April 18, 2016, Justin offered to promote Plaintiff from her temporary position as a Harvest Cellar Intern to a full-time Cellar Worker.  (Hanson Decl. ¶ 12, Exh. 4 (04/18/2016 Offer Letter).)  On April 18, 2016, Plaintiff accepted the offer, and entered into a second "Confidentiality, Trade Secrets and Arbitration Agreement" with Justin (the "Arbitration Agreement").  (Hanson Decl. ¶ 13, Exh. 5 (Second Arbitration Agreement).)  Paragraph 10 of the Arbitration Agreement contains the exact same Arbitration Provision present in the First Arbitration Agreement, as set forth above.  (*Id.*)  Further, Plaintiff again acknowledged her voluntary assent to arbitration by singing the April 18, 2016 offer letter ("04/18/2015 Offer Letter"), which again states:

> **5. WE BOTH AGREE THAT ANY DISPUTE ARISING WITH RESPECT TO YOUR EMPLOYMENT AND ANY TERMINATION OF SUCH EMPLOYMENT SHALL BE CONCLUSIVELY SETTLED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES DESCRIBED IN THE CONFIDENTIALITY, TRADE SECRETS, AND ARBITRATION**

**AGREEMENT ATTACHED HERETO.**

(Hanson Decl. ¶ 12, Exh. 4 (04/18/2015 Offer Letter) (emphasis in original).)

Additionally, the Arbitration Provision contains the exact same definition of "Company Affiliates," which expressly includes TWC as an intended third-party beneficiary.  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 1(b).)

In sum, Plaintiff signed both the Agreement and the Second Offer Letter containing the foregoing express arbitration provisions. (*See* Hanson Decl. ¶¶ 12-13, Exhs. 4 & 5 (04/18/2015 Offer Letter and Agreement).)

**B.     Plaintiff's Intervention Complaint Is In Direct Contravention of the Binding Arbitration Agreement**

Despite the existence of a valid and enforceable arbitration agreement, which expressly applies to Plaintiff's claims, on or about January 30, 2023, Plaintiff, along with co-Intervenor Plaintiffs Patricia Verduzco, Blanca Verduzco, and Josefina Flores Diaz, filed their Complaint in Intervention ("Complaint") against Justin and TWC.  (Dkt. 41.)  Plaintiff's Complaint alleges exactly the types of claims that are the subject of the Arbitration Agreement.

The Complaint alleges seven (7) causes of action:  (1) Unlawful Employment Discrimination Based on Sex (Title VII of 1964 Civil Rights Act); (2) Unlawful Employment Discrimination Based on Sex (Cal. Govt. Code § 12940); (3) Hostile Work Environment – Sexual Harassment (Title VII); (4) Hostile Work Environment – Sexual Harassment (Cal. Govt. Code § 12940); (5) Relief from Retaliation (Title VII); (6) Relief from Unlawful Retaliation (Cal. Govt. Code § 12940(H)); (7) Failure to Prevent Discrimination and Harassment (Cal. Govt. Code § 12940(k)). (Dkt. 41.)  All of Plaintiff's claims are encompassed within the Arbitration Agreement as they arise out of, or relate to, Plaintiff's employment with Justin.  As discussed below, TWC, is an intended third party beneficiary to the arbitration agreement.  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 1(b).)

### III.   LEGAL STANDARD

The FAA provides that any agreement within its scope "shall be valid, irrevocable, and enforceable." *See* 9 U.S.C. § 2; *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA reflects a liberal policy favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 356. It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).

"Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement." *Wu v. Google, Inc.*, No. 13-CV-01871-JSW, 2013 WL 12323920, at *2 (N.D. Cal. 2013) (citing 9 U.S.C. § 4; *Chiron Corp.* v. *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir 2000)). The court should then stay the action. 9 U.S.C. § 3. The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

### IV.   ARGUMENT

#### A.   All of Plaintiff's Claims Relate to Her Employment With Justin and are Subject to Arbitration

"The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). A court assessing the scope of an arbitration agreement is required to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

that covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 654 (1986) ("in the absence of any express provision excluding a particular grievance . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" (Brennan, J., concurring) (alteration in original)). Furthermore, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91. A court must resolve any doubts with respect to the scope of an arbitration agreement in favor of compelling arbitration. *Chiron Corp.*, 207 F.3d at 1131 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Here, there can be no dispute that Plaintiff's claims are within the scope of the Arbitration Agreement as each of the seven causes of action asserted by Plaintiff are wholly related to her employment with Justin.

## B. The FAA Applies to the Arbitration Agreement

The enforceability of the Arbitration Agreement is indisputably governed by the FAA because: (1) the Arbitration Agreement expressly states the FAA applies; (2) the contract involves "commerce."[2]

First, the Arbitration Agreement itself provides that the FAA is applicable: "Employee and the Company agree that this provision and any arbitration under this provision ***shall be governed by the Federal Arbitration Act ("FAA")***, and if applicable, shall also be governed by the California Code of Civil Procedure sections 1280, *et seq*...." (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(b) (emphasis added).) Thus, the language in the Arbitration Agreement

---

[2] An arbitration agreement only needs to meet two conditions for the FAA to apply: (1) it must be in writing and (2) it must be part of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. An arbitration agreement that satisfies these two requirements is "valid, irrevocable, and enforceable" under federal law. *Id*.

1  evidences that the parties intended the FAA would apply. *See Buckeye Check*
2  *Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (applying the FAA to
3  resolve motion to compel brought in state court where the parties selected the FAA
4  to govern in their arbitration agreement).  Second, the FAA applies here as the
5  contract "involves commerce." *See* 9 U.S.C. §§ 1-2.  The FAA's term "involving
6  commerce" is interpreted broadly.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56
7  (2003); *see e.g.*, *Mercado v. Sally Beauty Supply LLC,* No. 215-CV-02316-KJM-
8  CKD, 2016 WL 3361883, at *3 (E.D. Cal. 2016) (finding the FAA applied where
9  employers and/or their affiliates sold and distributed products nationally).
10 Plaintiff's employment by Justin, which produces, bottles and sells wine nationally,
11 is sufficient to satisfy this requirement.  (Hanson Decl. ¶ 2; Dkt. 41 (Complaint)
12 ¶ 10.)
13         Accordingly, the FAA applies to the Arbitration Agreement.
14         **C.     Plaintiff Agreed To Arbitrate**
15         In determining whether the parties agreed to arbitrate, the Court should
16 "apply ordinary state-law principles that govern the formation of contracts." *See*
17 *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here,
18 California law governs because the parties are residents of California and all the
19 events giving rise to this dispute occurred in California.
20         "It is well established 'that where the contract contains an arbitration clause,
21 there is a presumption of arbitrability.'"  *Comedy Club, Inc. v. Improv W. Assocs.*,
22 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns*
23 *Workers of Am.*, 475 U.S. 643, 650 (1986)).  Only "the most minimal indication of
24 the parties' intent to arbitration must be given full effect." *Republic of Nicaragua v.*
25 *Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).
26         The party seeking arbitration bears the initial burden of showing an arbitration
27 agreement exists; the party opposing arbitration bears the burden of proving facts
28 necessary to its defense. *Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633,

1  636-37 (N.D. Cal. 2019).  In determining whether parties agreed to arbitration,

2  courts "apply ordinary state-law principles that govern the formation of contracts."

3  *Id.* at 637; *see also First Options of Chicago, Inc.*, 514 U.S. at 944.  "Under

4  California law, mutual assent is the key to contract formation."  *Cordas v. Uber*

5  *Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (citing *Binder v. Aetna Life*

6  *Ins. Co.*, 75 Cal. App. 4th 832 (1999)).  Moreover, "[a] party who signs a contract is

7  bound by its terms regardless of whether he reads it or considers the legal

8  consequences of signing it."  *Operating Eng'rs Pension Trust v. Cecil Backhoe*

9  *Serv., Inc.*, 795 F.2d 1501, 1505 (9th Cir. 1986).

10      Here, Plaintiff signed documents confirming her agreement to arbitrate four

11  times.  First, when she signed the 08/25/2015 Offer Letter, which included a

12  provision—emphasized in bold and capitalized— in which Plaintiff agreed to

13  arbitrate any employment related disputes, as well as an acknowledgment that the

14  arbitration would be bound by the terms of the First Arbitration Agreement.

15  (Hanson Decl. ¶ 10, Exh. 2 (08/25/2018 Offer Letter).)  Plaintiff also signed the

16  First Arbitration Agreement, which went to effect on August 31, 2015.  (Hanson

17  Decl. ¶ 11, Exh. 3 (First Arbitration Agreement).)

18      Less than eight months later, Plaintiff again acknowledged her duty to

19  arbitrate when she accepted the 04/18/2016 Offer Letter and signed the

20  accompanying Arbitration Agreement.  (Hanson Decl. ¶¶ 12-13, Exhs. 4 & 5

21  (04/18/2016 Offer Letter and Arbitration Agreement).)  By signing these four

22  documents, Plaintiff indicated her voluntary assent to be bound by the terms of the

23  agreement.

24      **D.    Plaintiff Agreed To Delegate Arbitrability to the Arbitrator**

25      In accepting the Arbitration Agreement, Plaintiff agreed to delegate the issue

26  of arbitrability to the arbitrator.  "An agreement to arbitrate a gateway issue is

27  simply an additional antecedent argument the party seeking arbitration asks the

28  federal court to enforce, and the FAA operates on this additional arbitration

1  agreement just as it does on any other."  *Rent-A-Center W., Inc. v. Jackson*, 561 U.S.

2  63, 69-70 (2010).  Thus, once the party seeking to compel arbitration establishes the

3  existence of an agreement containing a "clear and unmistakable" delegation, the

4  Court "possesses no power to decide the arbitrability issue" and must compel

5  arbitration.  *Henry Schein v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

6  An agreement "clearly and unmistakably" delegates arbitrability to the arbitrator

7  when it includes an express delegation clause *or* incorporates arbitration rules giving

8  the arbitrator the authority to decide.  *See Malone v. Super. Ct.*, 226 Cal. App. 4th

9  1551, 1560 (2014).

10       Here, the parties delegated arbitrability issues to the arbitrator by

11  incorporating by reference the JAMS Rules into the Arbitration Agreement.

12  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 9(c) ("The arbitration

13  process shall be administered by JAMS pursuant to its Employment Arbitration

14  Rules & Procedure (the "JAMS Rules").").)  JAMS Rule 11(b) states:

15       Jurisdictional and arbitrability disputes, including disputes over the formation,
         existence, validity, interpretation or scope of the agreement under which
16       Arbitration is sought, and who are proper Parties to the Arbitration, shall be
         submitted to and ruled on by the Arbitrator.  Unless the relevant law requires
17       otherwise, the Arbitrator has the authority to determine jurisdiction and
18       arbitrability issues as a preliminary matter.

19  (Declaration of Jenna W. Logoluso in support of Defendant's Motion to Compel

20  Arbitration of Intervenor Plaintiff Olivia Barajas ("Logoluso Decl.") ¶ 2, Exh. 1,

21  (JAMS Rules), Rule 11(b).)  Courts have recognized that an arbitration agreement's

22  reference to or incorporation of JAMS rules underscores the parties' delegation of

23  gateway issues of arbitrability.  *See Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d

24  1005, 1013 (S.D. Cal. 2017) (finding that incorporation of JAMS rules constitutes a

25  clear delegation of arbitrability).

26       Thus, because the parties unambiguously agreed to delegate arbitrability

27  issues to the arbitrator through the incorporation of the JAMS Rules, this Court

28

should enforce that agreement. *See Qualcomm Inc. v. Nokia Corp*. 466 F.3d 1366, 1373 (Fed. Cir. 2006) (by agreeing to arbitrate under AAA rules, parties evidenced their unmistakable intent to delegate the issue of arbitrability to an arbitrator), *abrogated on other grounds*; *Madrigal v. New Cingular Wireless Servs. Inc.,* No. 09-CV-00033-OWW-SMS, 2009 WL 2513478, at *5-8 (E.D. Cal. 2009); *Fadal Machining Ctrs., LLC v. Compumachine, Inc*., 461 F.App'x. 630 (9th Cir. 2011); *see also Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. 2016) (collecting cases holding that incorporation of arbitrator rules evidence clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability).

### E.   The Arbitration Agreement Meets Essential Elements of Fairness and Is Not Unconscionable

Under California law,[3] a contract must be both procedurally and substantively unconscionable to be rendered invalid. *Kilgore v. KeyBank, Nat.'l Ass'n,* 718 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted).

In *Armendariz v. Found. Health Psychcare Servs. Inc*., 24 Cal. 4th 83 (2000), the California Supreme Court set forth the current standard regarding the enforcement of arbitration agreements in the employment context. The *Armendariz* court held that arbitration agreements between employers and employees were enforceable if the agreement contained essential elements of fairness and was not unconscionable. *Id.*

### 1.   The Arbitration Agreement Contains All of the Essential Elements of Fairness

*Armendariz* held that an arbitration agreement is deemed fair if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable

---

[3] "State law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry*, 482 U.S. at 492 n.9.

costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id.* at 102.  As discussed in detail, below the Arbitration Agreement satisfies each of the requirements set forth by the court in *Armendariz.*

### (a)   The Arbitration Agreement Specifically Provides for a Neutral Arbitrator

The Arbitration Agreement sets forth a clear procedure to ensure the selection of a neutral and unbiased arbitrator.  The relevant portion provides that:

> The arbitrator shall be chosen with the mutual agreement of the parties; provided, however, that if the parties are unable to agree on the selection of an arbitrator within two weeks of the submission of the claim, JAMS shall appoint a neutral arbitrator to preside over the arbitration.

(Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(d).)  Should the parties fail to reach a mutual agreement, the JAMS Rules provide for a very detailed selection process.  Specifically, the JAMS Rules provide that JAMS will send the parties a list of five (5) candidates.  The parties will have seven (7) days to strike two (2) names from the list and rank the remaining arbitrators.  JAMS will then choose the arbitrator based on the highest composite ranking.  (Logoluso Decl. ¶ 2, Exh. 1 (JAMS Rules), Rule 15.)

### (b)   The Arbitration Agreement Provides for More Than Minimal Discovery

The Arbitration Agreement exceeds the "minimal discovery" requirement for arbitration agreements.  In fact, it expressly incorporates the mandatory and permissive rights of discovery set forth in California Code of Civil Procedure section 1283.05.  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(b).)  Further, the Arbitration Agreement specifically states that JAMS Employment Arbitration Rules & Procedures ("JAMS Rules") should be followed, which provide, *inter alia*:

> (a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI") relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an

initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

(Logoluso Decl. ¶ 2, Exh. 1 (JAMS Rules), Rule 17.)

Importantly, while the rules mention one deposition, that is simply a *minimum* that is set forth in the rules.  JAMS Rules permit as many depositions as is warranted by the case.  Based on the foregoing, the discovery permitted by the Arbitration Agreement more than adequately satisfies the "minimal discovery" standard.

### (c)   The Arbitration Agreement Provides for a Written Award

The Arbitration Agreement requires the arbitrator to issue a written decision. Specifically, Paragraph 10(c) states:  "[t]he award of the arbitrator shall be in writing and shall contain the arbitrator's factual findings, legal conclusions and reasons for the award."  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(c).)  Additionally, the JAMS Rules require the arbitrator's award to be in writing.  (Logoluso Decl. ¶ 2, Exh. 1 (JAMS Rules), Rule 24(h).)  Based on the foregoing, the Arbitration Agreement clearly meets the fairness requirement

1  requiring a written award.

2          **(d)**    **The Arbitration Agreement Provides for All Types of Relief that Would Otherwise Be Available in Court**

3

4        In order to be enforceable in the employment context, an arbitration

5  agreement "may not limit statutorily imposed remedies such as punitive damages

6  and attorney fees." *Armendariz*, 24 Cal. 4th at 103.  No such restrictions are present

7  here.  The Arbitration Agreement specifically states that "[t]he arbitrator shall have

8  the authority to award ***any individual damages or relief authorized by law***."

9  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(c) (emphasis added).)

10  Additionally, the JAMS Rules do not contain any limitation as to the type of relief

11  available in an employment dispute arbitration.  As such, this factor is also met.

        **(e)**    **The Arbitration Provision Does Not Require Plaintiff to Pay Any Costs, Fees, or Expenses She Would Not Otherwise Incur in a Court Action**

12

13        In *Armendariz*, the Court held that employees generally should not be

14  required to bear any additional expenses in arbitration that they would not incur if

15  the action proceeded in court.  *Armendariz*, 24 Cal. 4th at 110-11.  Here, the

16  Arbitration Agreement specifically provides that Justin will pay the arbitrator's fee.

17  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(c).)  By the plain

18  language of the Arbitration Agreement, Plaintiff will not be required to pay for any

19  additional expenses in arbitration that she would not have otherwise incurred in a

20  court action.

21       **2.**    **The Arbitration Agreement Is Not Unconscionable**

22        "Arbitration agreements that cover disputes over private, waivable rights are

23  valid if they satisfy established standards of conscionability." *Abramson v. Juniper*

24  *Networks, Inc.*, 115 Cal. App. 4th 638, 655 (2004).  In determining whether an

25  arbitration agreement is unconscionable, California courts generally apply a two-

26  prong test that examines procedural and substantive unconscionability.  "Both

27  procedural and substantive unconscionability must be present before a court can

28

1  refuse to enforce an arbitration provision based on unconscionability." *Id*.; *Stirlen v.*
2  *Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997), *as modified* (Feb. 10, 1997)
3  ("The prevailing view is that these two elements must both be present in order for a
4  court to exercise its discretion to refuse to enforce a contract or clause under the
5  doctrine of unconscionability."). Additionally, unconscionable provisions may be
6  severed from the agreement as long as the agreement is not "permeated" with
7  unconscionable provisions. *McManus v. CIBC World Markets*, 109 Cal. App. 4th
8  76, 102 (2003), citing *Armendariz,* 109 Cal. App. 4th at 122-25.

9
10

**(a)     The Arbitration Agreement Is Not Procedurally Unconscionable**

11        In evaluating whether an arbitration clause is procedurally unconscionable,
12  courts focus on whether the employee was subject to "'oppression' or 'surprise' due
13  to unequal bargaining power." *Armendariz,* 24 Cal. 4th at 114. Although the
14  agreement to arbitrate was a condition of Plaintiff's job offer, "[t]he fact that the
15  arbitration clauses are adhesive does not as a matter of law render them
16  unenforceable." *McManus*, 109 Cal. App. 4th at 91. Likewise, there is no element
17  of surprise that would render the agreement to arbitrate unenforceable. "The
18  component of surprise arises when the challenged terms are 'hidden in a prolix
19  printed form drafted by the party seeking to enforce them.'" *Abramson*, 115 Cal.
20  App. at 656.    Here, the Arbitration Agreement is a standalone document, which
21  included bolding and capitalization to ensure the signing party was aware of the
22  purpose of the agreement. In particular, section 10(g) "Acknowledgement" was
23  both bolded and capitalized:

24        **BY VOLUNTARILY AGREEING TO THIS ARBITRATION**
25        **PROVISION, THE COMPANY AND EMPLOYEE BOTH GIVE UP**
       **THEIR RIGHTS TO HAVE ANY DISPUTES BETWEEN THEM**
26        **THAT ARE COVERED WITHIN THE SCOPE OF THIS**
       **AGREEMENT HEARD BY A JURY OR RESOLVED IN ANY OTHER**
27        **FORUM, INCLUDING COURT.**

28

(Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 10(g) (emphasis in original).) The corresponding 03/19/28 Offer Letter also included a similar provision bolded and capitalized.  (Hanson Decl. ¶ 12, Exh. 4 (04/18/2018 Offer Letter), ¶ 5.) Regardless, however, as discussed below, because there is no evidence of substantive unconscionability, the agreement to arbitrate must be enforced.

### (b)   The Arbitration Agreement Is Not Substantively Unconscionable

"'Substantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to 'shock the conscience.'" *Abramson*, 115 Cal. App. at 656.  In the present case, it is clear that the Arbitration Agreement does not contain any terms that could be construed as unconscionable.  The Agreement is not unfairly one-sided; it holds both parties to the same requirements.  All of the requirements in the Arbitration Agreement apply to both employer and employee, and it is clear that the central purpose of the Arbitration Agreement is to mutually arbitrate a wide variety of claims between employer and employee, and nothing more.  *See King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349, 358 (1981) ("As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence. … The instant contract reveals no provisions weighted in favor of the stronger party and appellants have not established the existence of economic coercion to contract. Accordingly, the contract is not one of adhesion and … [t]he trial court correctly found the existence of an underlying written agreement to arbitrate.").  Based on the foregoing, it is clear that the parties' agreement to arbitrate is substantively consciable.

### F.   Public Policy Supports Compelling Plaintiff's Claims to Arbitration

Under California law, obligations to arbitrate claims are strictly enforced. "Arbitration is not only legislatively endorsed but 'judicially favored' in this state,

where it is seen 'as an economical, efficient alternative to traditional litigation in law courts.  And given its favored status, [California] courts 'indulge' every 'intendment' to implement and give effect to arbitration proceedings." *Stirlen*, 51 Cal. App. 4th at 1544 (alternation in original) (citations omitted).  Accordingly, courts order parties to arbitration whenever the record demonstrates there is an agreement to arbitrate. *See, e.g.*, *Valson Partners Ltd. P'ship v. Calcor Space Facility, Inc.*, 25 Cal. App. 4th 809, 816-17 (1994) ("[w]here the record shows that there was an agreement to arbitrate, the trial court is required to order arbitration …"); Cal. Civ. Proc. Code § 1281.2 ("On petition of any party to an arbitration agreement ..., the court ***shall*** order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists ...." (emphasis added)).

Where, as here, the parties have a written agreement to arbitrate disputes, the Court should compel arbitration of the Plaintiff's claims.  To do otherwise would deprive Defendants of the benefit of its agreements with Plaintiff, force Defendants to litigate a dispute that Plaintiff expressly agreed to submit to arbitration, and violate the strong legislative and judicial policy favoring enforcement of arbitration provisions.

### G.   TWC Has Standing To Enforce the Arbitration Agreement as an Intended Beneficiary

Although TWC did not sign the Agreement, it is identified in the Arbitration Agreement as an entity with whom Plaintiff agreed to arbitrate. TWC is thus a third-party beneficiary who is entitled to compel arbitration. "General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).[4]  These principles include the third-party beneficiary doctrine.

---

[4] State law determines whether a nonsignatory can enforce an arbitration

1  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Indeed, "it is well

2  established that a nonsignatory beneficiary of an arbitration clause is entitled to

3  require arbitration." *Harris v. Super. Ct.*, 188 Cal. App. 3d 475, 478 (1986). "A

4  third party may qualify as a beneficiary under a contract where the contracting

5  parties must have intended to benefit that individual and such intent appears on the

6  terms of the agreement." *Harper v. Wausau*, 56 Cal. App. 4th 1079, 1087 (1997);

7  *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211

8  (9th Cir. 2000) ("To sue as a third-party beneficiary of a contract, the third party

9  must show that the contract reflects the express or implied intention of the parties to

10  the contract to benefit the third party.").

11  The Arbitration Agreement reflects the contracting parties' express intention

12  to benefit TWC since TWC is named in the Arbitration Agreement's paragraph 1(b):

13      <u>Company Affiliates</u>.  For purposes of this Agreement, the term "<u>Company</u>" as

14      used herein shall include Justin Vineyards & Winery LLC … and any person, corporation, trust, partnership or other entity (including, without limitation,

15      ***The Wonderful Company LLC***) … which, directly or indirectly, controls, is

16      controlled by, or is under common control with Justin Vineyards & Winery LLC …."

17

18  (Hanson Decl. ¶ 13, Exh. 5 (Arbitration Agreement), ¶ 1(b) (emphasis added).)

19  By requiring arbitration of claims brought by and against the Company and

20  including TWC (per the Agreement's paragraph 1(b)), the arbitration clause was

21  intended to benefit TWC. This intent appears on the terms of the agreement since

22  the definition of Company expressly includes TWC, and Plaintiff agreed to arbitrate

23  her claims against the Company including TWC. Accordingly, TWC is an intended

24  beneficiary of the Arbitration Agreement, and this Court should conclude that TWC

25  can compel arbitration of Plaintiff's claims against it.

26

27

28  _____

agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631-632 (2009).

1    **H.     The Court Should Stay Proceedings Related To Plaintiff's Claims**

2            Section 3 of the Federal Arbitration Act provides that, when presented with an

3    enforceable arbitration agreement which encompasses the Plaintiff's claims, the

4    Court shall stay the action pending resolution of the arbitration. 9 U.S.C. § 3. Thus,

5    Defendants respectfully request that this Court enter a stay of all proceedings until

6    the arbitration is complete.

7    **V.     CONCLUSION**

8            For the foregoing reasons, Defendants respectfully request this Court issue an

9    order compelling arbitration of Plaintiff's claims and for an order staying her claims

10   in the present action.

11

12   DATED:  February 17, 2023          ROLL LAW GROUP PC

13

14

15                                      By:  ___*/s/ Jenna Logoluso*___

16                                           Jenna W. Logoluso
                                             Attorneys for Defendants,
17                                           JUSTIN VINEYARDS & WINERY LLC
                                             THE WONDERFUL COMPANY LLC
18

19

20

21

22

23

24

25

26

27

28