1  KRISTINA M. DIAZ (SBN 151566)
   kristina.diaz@roll.com
2  LISA A. STILSON (SBN 196059)
   lisa.stilson@roll.com
3  JENNA W. LOGOLUSO (SBN 266685)
   jenna.logoluso@roll.com
4  MATTHEW C. ONYETT (SBN 295419)
   Matthew.Onyett@roll.com
5  LAUREN BABST (SBN 313156)
   lauren.babst@roll.com
6  ROLL LAW GROUP PC
   11444 West Olympic Boulevard
7  Los Angeles, California 90064-1557
   Telephone:  (310) 966-8400
8  Facsimile:  (310) 966-8810

9  Attorneys for Defendants,
   JUSTIN VINEYARDS & WINERY LLC
10 THE WONDERFUL COMPANY LLC

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No. 2:22-cv-06039 PA (RAOx) |
| 15 | |
| 16        Plaintiff, | **DECLARATION OF DANNY HANSON IN SUPPORT OF DEFENDANTS JUSTIN VINEYARDS & WINERY LLC'S AND THE WONDERFUL COMPANY LLC'S MOTION TO COMPEL ARBITRATION OF INTERVENOR PLAINTIFF OLIVIA BARAJAS** |
| 17        vs. | |
| 18  JUSTIN VINEYARDS & WINERY LLC, THE WONDERFUL COMPANY LLC, and DOES 1-10, inclusive, | |
| 19 | |
| 20        Defendants. | |
| 21 | Date:    March 20, 2023 |
|    | Time:    1:30 PM |
| 22 | Crtrm.:  9A |
| 23 | [Assigned to the Honorable Judge Percy Anderson] |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

{3356267.1}  {3356255.1}  {3355620.2}                    2:22-cv-06039 PA (RAOx)

# DECLARATION OF DANNY HANSON

I, Danny Hanson, declare as follows:

1.      1 am employed as the Director of Human Resources, Safety, and Facilities Maintenance for Defendant Justin Vineyards & Winery ("Justin"). I have worked for Justin since 2011 and have personal knowledge of the facts set forth herein and, if called upon to testify, could and would competently testify thereto. I submit this declaration in support of Defendants Justin Vineyards LLC's and The Wonderful Company LLC's Motion to Compel Arbitration of Intervenor Plaintiff Olivia Barajas ("Plaintiff").

2.      Justin is in the business of, among other things, producing, bottling, and selling wine nationally.

3.      As Justin's Director of Human Resources, I routinely meet with new employees and employees beginning a new job position or getting a promotion to review their onboarding/promotion documents, which include an arbitration agreement. It is also my practice to confirm the employee understands what they are signing and to answer questions they have concerning the documents.

4.      If any employee requests additional time to review any of the onboarding/promotion documents, including the arbitration agreement, it is Justin's policy and my practice to allow them to bring the document(s) home with them so that they can carefully review and/or consult with an attorney or advisor before deciding whether to sign it.

5.      Additionally, all employees are also provided with copies of all the onboarding/promotion documents that they sign, including the arbitration agreement.

6.      When I meet with employees that primarily speak Spanish, it is my practice to have a translator attend the meeting in person or by phone to explain each document to the employee and confirm the employees understand what they are signing.

{3356267.1} {3356255.1} {3355620.2}

2:22-cv-06039 PA (RAOx)

7.     For translations and explanations of onboarding/promotion documents to Spanish speaking employees, I would usually have Alicia Ballesteros, Justin's former Human Resources Manager or another Spanish fluent employee working in Justin's Human Resources Department provide translation as the Human Resources staff is familiar with the onboarding/promotion documents, including the arbitration agreement.  On the rare occasion that a representative from Human Resources was not available, I would have a Supervisor that is fluent in Spanish provide translation.  However, I typically schedule orientations and promotion meetings to ensure that someone from Human Resources who is fluent in Spanish is available to explain the documents and answer any questions.

8.     Employees are not forced to sign documents on the spot.  If they have questions or would like more time to read the documents, they are permitted to do so.  Spanish speaking employees often take documents home so that an English speaking friend or family member can review the documents with them and provide translation.

9.     In or around 2017, Justin began emailing onboarding and promotion documents to its employees in advance so that they would have time to review the documents and get assistance if they do not understand the documents.  Employees were not then, nor are they now, required to sign any of the documents before they begin working.

10.    Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's August 25, 2015 Offer Letter.

11.    Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiff's signed August 25, 2015 "Confidentiality, Trade Secrets and Arbitration Agreement" with Justin.

12.    Attached hereto as **Exhibit 4** is a true and correct copy of Plaintiff's April 18, 2016 Offer Letter.

DECLARATION OF DANNY HANSON IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION OF OLIVIA BARAJAS

1    13.    Attached hereto as **Exhibit** 5  is a true and correct copy of Plaintiff's

2  signed April 25, 2016 "Confidentiality, Trade Secrets and Arbitration Agreement"

3  with Justin.

4    I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct and that this declaration was executed

6  in Paso Robles, California on February 15, 2023.

7

8                                          Danny Hanson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**



## JUSTIN
### VINEYARDS & WINERY

August 25th, 2015

Olivia Barajas
P.O. Box 4
San Ardo, CA 93450

RE:    Offer of Employment with JUSTIN Vineyards & Winery LLC

Dear Olivia:

We are pleased to confirm our offer of employment to you on the following terms:

1.    You will serve as Harvest Cellar Intern for JUSTIN Vineyards & Winery LLC (the "Company"), with employment commencing by August 31st, 2015 ("Start Date"). You will report to the Cellar Master, or such other person as the Company may from time to time determine.

You will be considered a temporary employee and only be entitled to those benefits required by law. While it is expected that your employment with the Company will conclude on or before December 1st, 2015 (the "End Date"), the Company (in its sole discretion) may elect to continue employing you after the End Date and adjust your status from "Temporary" to a "Regular" employee. We will evaluate your performance and will notify you, in writing, if we elect to change your job title, status, or the End Date. Nothing herein modifies your status as an at-will employee as detailed in Paragraph 3.

2.    The Company will pay the following compensation and benefits to you:

(a)    You will be paid $12.00 per hour, payable on a bi-weekly basis, in accordance with the Company's normal payroll practices. Your position is currently classified as non-exempt

{2455917.2}

(b)    <u>Fringe Benefits</u>.  Due to your Temporary classification you are not eligible for health, dental, private disability, vacation or any other benefits, except those required by law.

(c)    <u>Withholding and Deductions</u>.   All compensation and other amounts payable to you will be subject to such deductions as the Company is from time to time required to make pursuant to law, governmental regulation or order.

3.     Your employment relationship with the Company will be, and is intended to be, at will.  This Offer Letter contains the entire agreement between you and the Company as to the duration of your employment and the circumstances under which your employment may be terminated.  Nothing contained in this or any other materials generated by the Company or its employees, or any statement made by any employee of the Company, shall require the Company to have "just" or "good cause" to terminate the employment relationship or to change the terms and conditions of your employment.  Notwithstanding any disciplinary procedures, length of employment or Company rules or regulations, either you or the Company may terminate the employment relationship at any time, for any reason, with or without cause or prior notice. Further, the Company can demote, transfer, suspend or otherwise discipline you in its sole and absolute discretion.   Nothing in this Offer Letter, the Confidentiality, Trade Secrets and Arbitration Agreement attached hereto or any other personnel document, including benefit plan descriptions or employee handbooks, creates or is intended to create a promise or representation of continued or indefinite employment or employment for a specific term, in a specific position, or at a specific rate of pay.  There will be no agreement, express or implied, between you and the Company for any specific period of employment, or for continuing or long-term employment, unless it is in writing, signed by the Company's President.

4.     As a condition of your employment with the Company, you will furnish and will continue to furnish, the Company with all necessary documentation that will satisfy the requirements of the Immigration Reform and Control Act of 1986.  In addition, to the extent that background and credit checks have not yet been completed, this offer of employment is also contingent on receipt by the Company of credit checks, reference checks and background investigation satisfactory to the Company in its sole discretion. Finally, you will be obligated to sign and deliver to the Company the Confidentiality, Trade Secrets and Arbitration Agreement attached hereto.

5.     **WE BOTH AGREE THAT ANY DISPUTE ARISING WITH RESPECT TO YOUR EMPLOYMENT AND ANY TERMINATION OF SUCH EMPLOYMENT SHALL BE CONCLUSIVELY SETTLED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES DESCRIBED IN THE CONFIDENTIALITY, TRADE SECRETS, AND ARBITRATION AGREEMENT ATTACHED HERETO.**

6. This offer will expire seven (7) days after the date of this letter.

7. This letter and the attached Confidentiality, Trade Secrets and Arbitration Agreement set forth the entire understanding between us and supersede any prior agreements. The Company

may, in its sole discretion, adjust salaries, incentive compensation, benefits, job titles, locations, duties, responsibilities, and reporting relationships.

Please indicate your agreement to accept the offer of employment on the terms outlined above by signing below. On your Start Date, as a condition of employment, you must provide Human Resources with a "wet"/non-electronic signature on the Confidentiality, Trade Secrets and Arbitration Agreement. Even if you do not execute the Confidentiality, Trade Secrets and Arbitration Agreement, you agree that your acceptance of this offer of employment constitutes your acceptance of all terms and conditions in the Confidentiality, Trade Secrets and Arbitration Agreement, including but not limited to its provisions regarding confidentiality and its mutual agreement to arbitrate. We look forward to you joining our team at JUSTIN Vineyards & Winery LLC. If you have any questions, please call Danny Hanson at 805-591-3252.

JUSTIN Vineyards & Winery LLC

By: _____

Julie Silver
Chief Financial Officer

ACKNOWLEDGED AND AGREED
THIS 31 DAY OF August, 20 15

Olivia Barajas
Olivia Barajas

{2455917.2}

**EXHIBIT 3**

## JUSTIN VINEYARDS & WINERY LLC
## CONFIDENTIALITY, TRADE SECRETS AND ARBITRATION AGREEMENT

> *THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT THAT REQUIRES*
> *BOTH YOU AND THE COMPANY TO ARBITRATE ANY DISPUTES AS PROVIDED HEREIN.*

This Confidentiality, Trade Secrets And Arbitration Agreement (the "Agreement") is entered into as of August 31st, 2015 (the "Effective Date") by and between JUSTIN Vineyards & Winery LLC, with an address at 11680 Chimney Rock Road Paso Robles, CA 93446 (the "Company"), and Olivia Barajas with an address at P.O. Box 4, San Ardo, CA 93450 ("Employee"). In consideration of the promises and mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is mutually covenanted and agreed by and between the parties as follows:

1. Confidential Information.

   a.    Company Information.   Employee shall, at all times during the term of Employee's employment with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without the prior written consent of the Company, any Confidential Information of the Company. For the purposes of this Agreement, the term "Confidential Information" means: (i) information or material that gives or could give the Company some competitive advantage or the disclosure of which could be detrimental to the Company's interests; (ii) information or material which is owned by the Company or in which the Company has an interest (including information or material Employee conceives, originates, discovers or develops in whole or in part while employed by the Company); (iii) all information (in writing or otherwise) concerning the Company (including, without limitation, information concerning the Company's business, assets, liabilities, operations, affairs, financial condition, projections, contracts, customers, products, ingredients, formulations, plans, product plans, services, business partners, markets, software, developments, inventions, processes, technology, designs, drawings, engineering, hardware configuration information, prospects or government or agency investigations, or Stewart or Lynda Resnick's personal or family matters) which is not generally known by the public; and (iv) all analyses, compilations, studies, reports, research, results, records or other documents or materials which contain, or are prepared on the basis of, any information or material which the Company furnished to Employee or prepared by or for Employee based on information or material which the Company furnished to Employee. Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of Employee or of others who were not under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

   b.    Company Affiliates.   For purposes of this Agreement, the term "Company" as used herein shall include JUSTIN Vineyards & Winery LLC, Lynda and Stewart Resnick, and any person, corporation , trust, partnership or other entity (including, without limitation, The Wonderful Company LLC), trust, partnership or other entity which, directly or indirectly, controls, is controlled by, or is under common control with JUSTIN Vineyards & Winery LLC, or any entity

or trust owned or controlled by Lynda and Stewart Resnick or under which any of their heirs are beneficiaries.

        c.    <u>Former Employer Information</u>.  Employee shall not, during Employee's employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and Employee shall not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

        d.    <u>Third Party Information</u>.  Employee shall hold all confidential or proprietary information that the Company has received from any third party to which it is the Company's obligation to maintain the confidentiality of such information and to use it only for certain limited purposes in the strictest confidence and not to disclose it to any person, firm or entity or to use it except as necessary in carrying out Employee's work for the Company consistent with the Company's agreement with such third party.

        e.    <u>Other Confidentiality Agreements</u>.  Any confidentiality, non-solicitation and non-competition obligations in other agreements with Company, or to which Employee is otherwise subject or bound regarding the Company ("<u>Other Confidentiality Agreements</u>"), shall be read in conjunction with any similar provisions contained herein for the broadest reading in favor of the Company and in maintaining the confidentiality of Company's information.  To the extent that there is any provision in the Other Confidentiality Agreements that would conflict with and provide the Company with less protection for its Confidential Information, this Agreement will control.

    2.    <u>Inventions</u>.  Employee hereby represents, warrants and covenants with respect to Prior Inventions or Inventions (each, as defined below), as the case may be, as follows:

        a.    <u>Inventions Retained and Licensed</u>.  Employee acknowledges and represents that Employee has no inventions, original works of authorship, developments, improvements, and trade secrets which were made by Employee prior to Employee's employment with the Company (collectively referred to as "<u>Prior Inventions</u>"), which belong to Employee, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder, other than those disclosed to Company in writing (on Exhibit B hereto) concurrently with the execution and delivery of this Agreement.  If in the course of Employee's employment with the Company, Employee incorporates into a product, process or machine for the benefit of the Company or any of its affiliates a Prior Invention owned by Employee or in which the Employee has an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.  Notwithstanding the foregoing, Employee agrees that Employee will not incorporate or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent, which may be withdrawn in the Company's sole discretion.

b.    Assignment of Inventions.  Employee shall make, or will promptly make, full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assigns to the Company, or its designee, all of Employee's right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Employee may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Employee is employed by the Company (collectively referred to as "Inventions"), except as provided in Section 2(g) below.

c.    Works for Hire.  Employee hereby acknowledges that all original works of authorship that are made by Employee (solely or jointly with others) within the scope of and during the period of Employee's employment with the Company and that are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. In the event the work for hire provisions of the U.S. and foreign copyright laws do not apply, Employee hereby assigns to Company all right, title and ownership interest in any copyright rights throughout the world covering any work of authorship created by Employee within the scope of and during the period of Employee's employment with the Company. Employee hereby understands and agrees that the decision whether or not to commercialize or market any invention developed by Employee solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Employee as a result of the Company's efforts to commercialize or market any such invention.

d.    Inventions Assigned to the United States Or Elsewhere.  Employee shall assign to the United States government all Employee's right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.  Moreover, Employee understands and agrees that the nature of Employee's duties involve interstate and international commerce. Employee agrees to take any action requested by the Company to permit the Company to assign all Employee's right, title, and interest in and to any and all Inventions to any state or national government whenever such assignment is requested by the Company.

e.    Maintenance of Records.  Employee shall keep and maintain adequate and current written records of all Inventions made by Employee (solely or jointly with others) during the term of Employee's employment with the Company.  The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company.  The records will be available to and remain the sole property of the Company at all times.

f.    Patent and Copyright Registrations.  Employee shall assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating

{2455917.2}

thereto. Employee agrees that it is Employee's obligation to execute or cause to be executed, when it is in Employee's power to do so, any such instrument or papers after the termination of this Agreement. If the Company is unable because of the Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agent and attorney in fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Employee.

g. Exception to Assignments. It is agreed and acknowledged that the provisions of this Agreement assigning Inventions to Company or requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit A) or similar applicable law. Employee covenants that he will advise the Company promptly in writing of any inventions that he/she believes meet the criteria in California Labor Code Section 2870 or similar state law and not otherwise disclosed as contemplated above.

3. Conflicting Employment. Employee hereby represents and warrants that Employee is not a party to any agreement, written or otherwise, that would prohibit or restrict Employee's employment with the Company. Employee further agrees that he will not divulge any information to the Company that constitutes the trade secret (as defined under applicable law) of an entity or individual unaffiliated with the Company or as otherwise prohibited by law. Employee shall perform Employee's duties faithfully and to the best of Employee's ability and shall devote Employee's full business time and effort to the performance of Employee's duties hereunder. Employee shall not, during the term of Employee's employment with the Company, engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company, or its affiliates are now involved or become involved during the term of Employee's employment, nor will Employee engage in any other activities that conflict with Employee's obligations to the Company. To permit the Company to evaluate whether Employee is engaging in any outside work that constitutes a conflict of interest, Employee agrees to immediately notify the Company if during Employee's employment with the Company, Employee performs work for any entity or individual (including, but not limited to self-employment). Employee's employment with the Company will be considered the primary employment and it is expected that Employee will give the Company precedence in terms of scheduling and as otherwise required.

4. Returning Company Documents. Within one (1) day of the termination of Employee's employment with the Company, Employee shall deliver to the Company (and will not keep in Employee's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Employee pursuant to Employee's employment with the

{2455917.2}

Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 2(d) above.

5.      Notification of New Employer.  In the event that Employee leaves the employ of the Company, Employee hereby grants consent to notification by the Company to Employee's new employer about Employee's rights and obligations under this Agreement.  Employee agrees to notify the Company's Human Resources department in writing within two (2) business days of accepting any new offer of employment.

Non-Solicitation Obligations.

(a)      Non-Solicitation of Employees.  To avoid disrupting, damaging, impairing or interfering with the Employer's relationship with its employees and consultants, Employee shall not, for a period of (1) one year after Employee's Termination Date, directly or indirectly solicit or encourage to leave the Employer (or any affiliate of the Employer), any employee of or consultant to, the Employer (or any affiliate of the Employer), or any employee or consultant who has left the Employer (or any affiliate of the Employer) within one (1) year of the termination of the employment or engagement of such employee or consultant where such employee or consultant worked directly or indirectly with Employee during Employee's employment with the Employer.

(b).      *Non-Solicitation of Customers.*   For a period of one (1) year after Employee's Termination Date, Employee shall not solicit or assist any other person to solicit any business (other than for the Employer, or affiliate of the Employer) from any present or past customer of the Employer or affiliate of the Employer where the identity of such customer is based on confidential, proprietary, or trade secret information learned by Employee because of Employee's employment with Employer.

(c)      *Prohibition on Usage of Trade Secrets.*  In addition to, and without limitation to those restrictions provided by sub-paragraphs (a) and (b) above, Employee further agrees that Employee shall never, on behalf of Employee or any other person or entity, use any confidential, proprietary, or trade secret (as defined under California law) information to directly or indirectly solicit or encourage any of any Releasee's employees, consultants, contractors, customers, suppliers, or persons or entities who provide goods or services to any Releasee, to terminate their employment or relationship with any Releasee, to modify such relationship in a manner that is adverse to the interests of any Releasee, or to violate any contracts with any Releasee.

(d)      *Recital Regarding Competition.*  The Parties agree that nothing in this Paragraph 6 shall prevent Employee from competing with Employer or an affiliate of Employer and that nothing herein precludes Employee from working with or for a competitor of the Employer or an affiliate of Employer.

6.      Right to Advice of Counsel.  Employee acknowledges that Employee has reviewed this Agreement, had the right and opportunity to consult with legal, financial or other counsel of the Employee's choosing and is fully aware of Employee's rights and obligations

under this Agreement. Employee further acknowledges and agrees that Employee also has had the opportunity to discuss and negotiate the terms of this Agreement with the Company.

7.    Successors and Assigns. All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

8.    Notice Clause.

a.    Manner. Any notice hereby required or permitted to be given shall be sufficiently given if in writing and delivered in person or sent by registered or certified mail, postage prepaid, to either party at the address of such party as set forth above or such other address as shall have been designated by written notice by such party to the other party.

b.    Effectiveness. Any notice or other communication required or permitted to be given under this Agreement will be deemed given on the day when delivered in person, or the third business day after the day on which such notice was mailed in accordance with this Section.

9.    Arbitration.

a.    Mutual Agreement to Arbitrate. Both the Company and Employee voluntarily agree that any claim, dispute, or controversy arising out of or relating to Employee's employment with the Company or the termination of that employment shall be submitted to final and binding arbitration in accordance with the terms of this arbitration provision. Examples of claims, disputes or controversies that must be resolved through the process set forth in this provision rather than in court include, but are not limited to, embezzlement/conversion, disclosure of trade secrets, breach of confidentiality agreement, wage and benefit claims; contract claims; personal injury claims; claims for equitable relief; tort claims, such as claims for wrongful termination and defamation; discrimination and harassment claims including, without limitation, those claims brought under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the American with Disabilities Act, the California Fair Employment and Housing Act, the Family Medical Leave Act, the California Family Rights Act, the Employment Retirement Income Securities Act of 1974; and any other employment-related claims of any type unless otherwise stated herein. This Agreement applies to all claims that the Company may have against Employee, as well as all claims that Employee may have against the Company, including its owners, directors, officers, employees, managers, members, agents, and parties affiliated with its employee benefit and health plans, past and present and each of them.

b.    Law Governing Arbitration Provision. Employee and the Company agree that this provision and any arbitration under this provision shall be governed by the Federal Arbitration Act ("FAA"), and if applicable, shall also be governed by California Code of Civil Procedure sections 1280, et seq. (including without limitation section 1283.05 and its mandatory and permissive rights to discovery).

{24559172}

c. Procedural Rules Governing Arbitration Process. The arbitration process shall be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures (the "JAMS Rules"). The JAMS Rules are available from Human Resources and may be obtained online free of charge at http://www.jamsadr.com/rules-employment-arbitration/. Any changes to the JAMS Rules may be updated from time to time, but the parties agree to us those rules in effect at the time that arbitration is commenced. The arbitration proceedings will be held in the State of California in the County of Los Angeles, or in the State and County in which Employee works or worked for the Company, before a single, neutral arbitrator. The fees of the arbitrator and all other costs that are unique to the arbitration process shall be paid by the Company where required by law. Otherwise, each party shall be solely responsible for paying his/her/its own costs for the arbitration, including but not limited to attorneys' fees and expert witness fees. However, if either party prevails on a claim which affords the prevailing party attorneys' fees pursuant to law, statute, or contract, the arbitrator may award reasonable attorneys' fees to the prevailing party.

The arbitrator shall have the authority to award any individual damages or relief authorized by law. The award of the arbitrator shall be in writing and shall contain the arbitrator's factual findings, legal conclusions and reasons for the award. The award, which shall be final and binding, may be entered as a judgment in any court with jurisdiction over either Employee or the Company. As provided by law, the arbitrator's award shall expressly indicate whether pre-award or pre-judgment interest is awarded, its amount, and the timing for when such pre-award or pre-judgment interest begins to accrue. All rules of evidence and all rules and rights of pleading shall apply in the arbitration proceeding. The arbitrator shall have the authority to entertain discovery disputes and dispositive motions. The resolution of such disputes and motions shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any other basis in reaching his or her conclusions.

d. Initiating Arbitration. Claims must be submitted to JAMS in accordance with the JAMS Rules for commencing an arbitration within the time period set forth in the applicable statute of limitations. The arbitrator shall be chosen with the mutual agreement of the parties; provided, however, that if the parties are unable to agree on the selection of an arbitrator within two weeks of the submission of the claim, JAMS shall appoint a neutral arbitrator to preside over the arbitration.

e. Claims Excluded from Arbitration. Either party may seek prohibitory provisional relief in Court pursuant to California Code of Civil Procedure Section 1281.8. Moreover, the following actions shall not be subject to mandatory arbitration pursuant to this Mutual Agreement to Arbitrate: (i) claims within the jurisdictional limitation of small claims courts of the state where the claim is submitted for resolution; (ii) claims for workers' compensation benefits; (iii) claims for unemployment insurance compensation benefits; (iv) to the extent required by law, administrative claims or charges before applicable federal and state administrative agencies (such as California's Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, (iv) any unfair labor charge which is to be brought under the National Labor Relations Act; and (v) any claim that cannot be arbitrated by applicable law.

{2455917.2}

f.  <u>Individual Capacity Of Arbitration</u>.   To the extent permitted by law and consistent with (e) above, Employee and the Company further agree that claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.  The arbitrator may not consolidate more than one person's/entity's claims, and may not otherwise preside over any form of a representative or class proceeding, except as permitted in (e) above.

g.  <u>Acknowledgement</u>.   **BY VOLUNTARILY AGREEING TO THIS ARBITRATION PROVISION, THE COMPANY AND EMPLOYEE BOTH GIVE UP THEIR RIGHTS TO HAVE DISPUTES BETWEEN THEM HEARD BY A JURY OR RESOLVED IN ANY OTHER FORUM, INCLUDING COURT.**

10.   Interpretation.  Except as indicated in Paragraph 9(b), this Agreement and the attached Offer Letter shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California. This Agreement and the attached Offer Letter shall be construed as a whole and in accordance with their fair meaning; captions are for convenience only and shall not be used in construing meaning.  Although this Agreement and the attached Offer Letter have been drafted by the Employer, the Parties agree that in any construction and/or interpretation made of this Agreement, the same shall not be construed against the Employer or any Releasee on the basis that the Employer was the drafter. All pronouns and any variations thereof shall be deemed to refer to masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require.

11.   Severability.  In the event that any provision or any part of any provision of this Agreement shall be void or unenforceable for any reason whatsoever, then such provision shall be stricken and of no force and effect. However, unless such stricken provision goes to the essence of the consideration bargained for by a party, the remaining provisions of this Agreement shall continue in full force and effect, and to the extent required, and shall be modified to preserve their validity.

12.   Integration.  This Agreement and the attached Offer Letter constitute and contain the entire agreement and understanding between the parties and supersede all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof.  Employer has made no promises to Employee other than those contained in this Agreement and the attached Offer Letter. This Agreement and the attached Offer Letter may not be modified, or any provision waived, except by a signed written agreement of the affected parties. In the event that there is a conflict between any term contained herein and any employee handbook or other document or policy provided to Employee, the terms of this Agreement shall govern unless otherwise agreed to by a signed writing of the Company's President.

13. .   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute one and the same instrument.  Facsimile or the electronic transmission of a signature on this document shall be deemed an original.

IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by their duly authorized officers, as of the day and year first above written.

| *Olivia Barajas*<br>Olivia Barajas | **JUSTIN Vineyards & Winery LLC**<br><br>By: *Julie Silver*<br>Julie Silver<br>Chief Financial Officer |
| --- | --- |

{2455917.2}

**EXHIBIT A**

**CALIFORNIA LABOR CODE SECTION 2870**
**INVENTION ON OWN TIME – EXEMPTION FROM AGREEMENT**

"(a)    Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of employee's rights in an invention to employee's employer shall not apply to an invention that the employee developed entirely on employee's own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)    Result from any work performed by the employee for the employer.

(b)    To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**EXHIBIT B**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|------------------------------------------|
|       |      |                                          |

**EXHIBIT 4**



## JUSTIN
VINEYARDS & WINERY

April 18, 2016

Olivia Barajas
P.O. Box 4
San Ardo, CA 93450

RE:     Offer of Employment with JUSTIN Vineyards & Winery LLC

Dear Olivia:

We are pleased to confirm your employment with us on the following terms:

1.     Your current position is Harvest Cellar Worker.  Effective April 25, 2016 ("Start Date"), you are being promoted to the position of Cellar Worker for JUSTIN Vineyards & Winery LLC (the "Company").  In this position, you are reporting to the Assistant Winemaker, or such other person as the Company may from time to time determine.

2.     The Company will pay the following compensation and benefits to you:

(a)     Base Salary.  Effective the Start Date, you will be paid $12.50 per hour, payable on a bi-weekly basis, in accordance with the Company's normal payroll practices.  Your position is currently classified as non-exempt.

(b)     Fringe Benefits.  You will be entitled to participate in benefits under the Company's benefit plans and arrangements, subject to and on a basis consistent with the terms, conditions and overall administration of such plans and arrangements.  Unless otherwise prohibited by law, the Company shall have the right to amend or delete any such benefit plan or arrangement made available by the Company at any time.  You will be eligible for health care benefits commencing on the first (1st) day of the first (1st) month following the effective date of your new position.  You will be entitled to participate in the Company's 401(k) plan commencing on the first (1st) day of the first (1st) month following the effective date of your new position.

(c)     Vacation.  Subject to the Company's current Employee Handbook and any applicable vacation cap therein, you will accrue paid vacation every year, earned on an as-worked, pro-rata basis during each year.  You will also be entitled to all paid holidays given to the Company's employees, although the nature of your job duties may require you to work holidays.  In such case, absent the written permission of the Company's President or the Company's most senior executive, as applicable, you will not be entitled to any additional compensation or "make up" days off unless otherwise required by applicable overtime rules or other applicable law.

      (d)    <u>Withholding and Deductions</u>.  All compensation and other amounts payable to you will be subject to such deductions as the Company is from time to time required to make pursuant to law, governmental regulation or order.

      3.    Your employment relationship with the Company will be, and is intended to be, at will. This Offer Letter contains the entire agreement between you and the Company as to the duration of your employment and the circumstances under which your employment may be terminated.  Nothing contained in this or any other materials generated by the Company or its employees, or any statement made by any employee of the Company, shall require the Company to have "just" or "good cause" to terminate the employment relationship or to change the terms and conditions of your employment.  Notwithstanding any disciplinary procedures, length of employment or Company rules or regulations, either you or the Company may terminate the employment relationship at any time, for any reason, with or without cause or prior notice.  Further, the Company can demote, transfer, suspend or otherwise discipline you in its sole and absolute discretion.  Nothing in this Offer Letter, the Confidentiality, Trade Secrets and Arbitration Agreement attached hereto or any other personnel document, including benefit plan descriptions or employee handbooks, creates or is intended to create a promise or representation of continued or indefinite employment or employment for a specific term, in a specific position, or at a specific rate of pay.  There will be no agreement, express or implied, between you and the Company for any specific period of employment, or for continuing or long-term employment, unless it is in writing, signed by the Company's President or the Company's most senior executive, as applicable.

      4.    To the extent that background and credit checks have not yet been completed, this offer of employment is also contingent on receipt by the Company of credit checks, reference checks and background investigation satisfactory to the Company in its sole discretion.  Finally, you will be obligated to sign and deliver to the Company the Confidentiality, Trade Secrets and Arbitration Agreement attached hereto.

      5.    **WE BOTH AGREE THAT ANY DISPUTE ARISING WITH RESPECT TO YOUR EMPLOYMENT AND ANY TERMINATION OF SUCH EMPLOYMENT SHALL BE CONCLUSIVELY SETTLED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES DESCRIBED IN THE CONFIDENTIALITY, TRADE SECRETS, AND ARBITRATION AGREEMENT ATTACHED HERETO.**

      6.  This offer will expire seven (7) days after the date of this letter.

      7.  This letter and the attached Confidentiality, Trade Secrets and Arbitration Agreement set forth the entire understanding between us and supersede any prior agreements.  The Company may, in its sole discretion, adjust salaries, incentive compensation, benefits, job titles, locations, duties, responsibilities, and reporting relationships.

Please indicate your agreement to accept the offer on the terms outlined above by signing your agreement below and on the Confidentiality, Trade Secrets and Arbitration Agreement attached to this letter. Even if you do not execute the Confidentiality, Trade Secrets and Arbitration Agreement, you agree that your acceptance of this offer constitutes your acceptance of all terms and conditions in the Confidentiality, Trade Secrets and Arbitration Agreement, including but not limited to its provisions regarding confidentiality and its mutual agreement to arbitrate. We look forward to you joining our team at JUSTIN Vineyards & Winery LLC. If you have any questions, please call Nicole Thompson, HR Generalist, at 805-591-3218.

JUSTIN VINEYARDS & WINERY LLC

By: _____
Julie Silver
Chief Financial Officer

ACKNOWLEDGED AND AGREED
THIS 15 DAY OF April , 20 16

Olivia Barajas
Olivia Barajas

**EXHIBIT 5**

**JUSTIN VINEYARDS & WINERY LLC**
**CONFIDENTIALITY, TRADE SECRETS AND ARBITRATION AGREEMENT**

---

**THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT THAT REQUIRES
BOTH YOU AND THE COMPANY TO ARBITRATE ANY DISPUTES AS PROVIDED HEREIN.**

---

This Confidentiality, Trade Secrets And Arbitration Agreement (the "Agreement") is entered into as of April 18, 2016 (the "Effective Date") by and between JUSTIN Vineyards & Winery LLC, with an address at 11680 Chimney Rock Road, Paso Robles, CA 93446 (the "Company"), and Olivia Barajas with an address at P.O. Box 4, San Ardo, CA 93450 ("Employee"). In consideration of the promises and mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is mutually covenanted and agreed by and between the parties as follows:

1.     Confidential Information.

       a.     Company Information. Employee shall, at all times during the term of Employee's employment with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without the prior written consent of the Company, any Confidential Information of the Company. For the purposes of this Agreement, the term "Confidential Information" means: (i) information or material that gives or could give the Company some competitive advantage or the disclosure of which could be detrimental to the Company's interests; (ii) information or material which is owned by the Company or in which the Company has an interest (including information or material Employee conceives, originates, discovers or develops in whole or in part while employed by the Company); (iii) all information (in writing or otherwise) concerning the Company (including, without limitation, information concerning the Company's business, assets, liabilities, operations, affairs, financial condition, projections, contracts, customers, products, ingredients, formulations, plans, product plans, services, business partners, markets, software, developments, inventions, processes, technology, designs, drawings, engineering, hardware configuration information, prospects or government or agency investigations, or Stewart or Lynda Resnick's personal or family matters) which is not generally known by the public; and (iv) all analyses, compilations, studies, reports, research, results, records or other documents or materials which contain, or are prepared on the basis of, any information or material which the Company furnished to Employee or prepared by or for Employee based on information or material which the Company furnished to Employee. Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of Employee or of others who were not under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

       b.     Company Affiliates. For purposes of this Agreement, the term "Company" as used herein shall include JUSTIN Vineyards & Winery LLC, Lynda and Stewart Resnick, and any person, corporation , trust, partnership or other entity (including, without limitation, The Wonderful Company LLC), trust, partnership or other entity which, directly or indirectly, controls, is controlled by, or is under common control with JUSTIN Vineyards & Winery LLC, or any entity or trust owned or controlled by Lynda and Stewart Resnick or under which any of their heirs are beneficiaries.

       c.     Former Employer Information. Employee shall not, during Employee's employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and Employee shall not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

d.      Third Party Information.  Employee shall hold all confidential or proprietary information that the Company has received from any third party to which it is the Company's obligation to maintain the confidentiality of such information and to use it only for certain limited purposes in the strictest confidence and not to disclose it to any person, firm or entity or to use it except as necessary in carrying out Employee's work for the Company consistent with the Company's agreement with such third party.

e.      Other Confidentiality Agreements.  Any confidentiality, non-solicitation and non-competition obligations in other agreements with Company, or to which Employee is otherwise subject or bound regarding the Company ("Other Confidentiality Agreements"), shall be read in conjunction with any similar provisions contained herein for the broadest reading in favor of the Company and in maintaining the confidentiality of Company's information.  To the extent that there is any provision in the Other Confidentiality Agreements that would conflict with and provide the Company with less protection for its Confidential Information, this Agreement will control.

2.      Inventions.  Employee hereby represents, warrants and covenants with respect to Prior Inventions or Inventions (each, as defined below), as the case may be, as follows:

a.      Inventions Retained and Licensed.  Employee acknowledges and represents that Employee has no inventions, original works of authorship, developments, improvements, and trade secrets which were made by Employee prior to Employee's employment with the Company (collectively referred to as "Prior Inventions"), which belong to Employee, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder, other than those disclosed to Company in writing (on Exhibit B hereto) concurrently with the execution and delivery of this Agreement.  If in the course of Employee's employment with the Company, Employee incorporates into a product, process or machine for the benefit of the Company or any of its affiliates a Prior Invention owned by Employee or in which the Employee has an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.  Notwithstanding the foregoing, Employee agrees that Employee will not incorporate or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent, which may be withdrawn in the Company's sole discretion.

b.      Assignment of Inventions.  Employee shall make, or will promptly make, full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assigns to the Company, or its designee, all of Employee's right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Employee may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Employee is employed by the Company (collectively referred to as "Inventions"), except as provided in Section 2(g) below.

c.      Works for Hire.  Employee hereby acknowledges that all original works of authorship that are made by Employee (solely or jointly with others) within the scope of and during the period of Employee's employment with the Company and that are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act.  In the event the work for hire provisions of the U.S. and foreign copyright laws do not apply, Employee hereby assigns to Company all right, title and ownership interest in any copyright rights throughout the world covering any work of authorship created by Employee within the scope of and during the period of Employee's employment with the Company.

Employee hereby understands and agrees that the decision whether or not to commercialize or market any invention developed by Employee solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Employee as a result of the Company's efforts to commercialize or market any such invention.

        d.      <u>Inventions Assigned to the United States Or Elsewhere</u>. Employee shall assign to the United States government all Employee's right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies. Moreover, Employee understands and agrees that the nature of Employee's duties involve interstate and international commerce. Employee agrees to take any action requested by the Company to permit the Company to assign all Employee's right, title, and interest in and to any and all Inventions to any state or national government whenever such assignment is requested by the Company.

        e.      <u>Maintenance of Records</u>. Employee shall keep and maintain adequate and current written records of all Inventions made by Employee (solely or jointly with others) during the term of Employee's employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

        f.      <u>Patent and Copyright Registrations</u>. Employee shall assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. Employee agrees that it is Employee's obligation to execute or cause to be executed, when it is in Employee's power to do so, any such instrument or papers after the termination of this Agreement. If the Company is unable because of the Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agent and attorney in fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Employee.

        g.      <u>Exception to Assignments</u>. It is agreed and acknowledged that the provisions of this Agreement assigning Inventions to Company or requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit A) or similar applicable law. Employee covenants that he will advise the Company promptly in writing of any inventions that he/she believes meet the criteria in California Labor Code Section 2870 or similar state law and not otherwise disclosed as contemplated above.

        3.      <u>Conflicting Employment</u>. Employee hereby represents and warrants that Employee is not a party to any agreement, written or otherwise, that would prohibit or restrict Employee's employment with the Company. Employee further agrees that he will not divulge any information to the Company that constitutes the trade secret (as defined under applicable law) of an entity or individual unaffiliated with the Company or as otherwise prohibited by law.

Employee shall perform Employee's duties faithfully and to the best of Employee's ability and shall devote Employee's full business time and effort to the performance of Employee's duties hereunder. Employee shall not, during the term of Employee's employment with the Company, engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company, or its affiliates are now involved or become involved during the term of Employee's employment, nor will Employee engage in any other activities that conflict with Employee's obligations to the Company. To permit the Company to evaluate whether Employee is engaging in any outside work that constitutes a conflict of interest, Employee agrees to immediately notify the Company if during Employee's employment with the Company, Employee performs work for any entity or individual (including, but not limited to self-employment). Employee's employment with the Company will be considered the primary employment and it is expected that Employee will give the Company precedence in terms of scheduling and as otherwise required.

4.    Returning Company Documents.  Within one (1) day of the termination of Employee's employment with the Company, Employee shall deliver to the Company (and will not keep in Employee's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Employee pursuant to Employee's employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 2(d) above.

5.    Notification of New Employer.  In the event that Employee leaves the employ of the Company, Employee hereby grants consent to notification by the Company to Employee's new employer about Employee's rights and obligations under this Agreement.  Employee agrees to notify the Company's Human Resources department in writing within two (2) business days of accepting any new offer of employment.

6.  Non-Solicitation Obligations.

(a)    *Non-Solicitation of Employees*.  To avoid disrupting, damaging, impairing or interfering with the Employer's relationship with its employees and consultants, Employee shall not, for a period of (1) one year after Employee's Termination Date, directly or indirectly solicit or encourage to leave the Employer (or any affiliate of the Employer), any employee of or consultant to, the Employer (or any affiliate of the Employer), or any employee or consultant who has left the Employer (or any affiliate of the Employer) within one (1) year of the termination of the employment or engagement of such employee or consultant where such employee or consultant worked directly or indirectly with Employee during Employee's employment with the Employer.

(b)    *Non-Solicitation of Customers*.  For a period of one (1) year after Employee's Termination Date, Employee shall not solicit or assist any other person to solicit any business (other than for the Employer, or affiliate of the Employer) from any present or past customer of the Employer or affiliate of the Employer where the identity of such customer is based on confidential, proprietary, or trade secret information learned by Employee because of Employee's employment with Employer.

(c)    *Prohibition on Usage of Trade Secrets*.  In addition to, and without limitation to those restrictions provided by sub-paragraphs (a) and (b) above, Employee further agrees that Employee shall never, on behalf of Employee or any other person or entity, use any confidential, proprietary, or trade secret (as defined under California law) information to directly or indirectly solicit or encourage any of any Company's employees, consultants, contractors, customers, suppliers, or persons or entities who provide goods or services to any Company, to terminate their employment or relationship with Company, to modify such relationship in a manner that is adverse to the interests of the Company, or to violate any contracts with the Company.

(d) *Recital Regarding Competition*. The Parties agree that nothing in this Paragraph 6 shall prevent Employee from competing with Employer or an affiliate of Employer and that nothing herein precludes Employee from working with or for a competitor of the Employer or an affiliate of Employer.

7. <u>Right to Advice of Counsel</u>. Employee acknowledges that Employee has reviewed this Agreement, had the right and opportunity to consult with legal, financial or other counsel of the Employee's choosing and is fully aware of Employee's rights and obligations under this Agreement. Employee further acknowledges and agrees that Employee also has had the opportunity to discuss and negotiate the terms of this Agreement with the Company.

8. <u>Successors and Assigns</u>. All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

9. <u>Notice Clause</u>.

a. <u>Manner</u>. Any notice hereby required or permitted to be given shall be sufficiently given if in writing and delivered in person or sent by registered or certified mail, postage prepaid, to either party at the address of such party as set forth above or such other address as shall have been designated by written notice by such party to the other party.

b. <u>Effectiveness</u>. Any notice or other communication required or permitted to be given under this Agreement will be deemed given on the day when delivered in person, or the third business day after the day on which such notice was mailed in accordance with this Section.

10. <u>Arbitration</u>.

a. <u>Mutual Agreement to Arbitrate</u>. Both the Company and Employee voluntarily agree that any claim, dispute, or controversy arising out of or relating to Employee's employment with the Company or the termination of that employment shall be submitted to final and binding arbitration in accordance with the terms of this arbitration provision. Examples of claims, disputes or controversies that must be resolved through the process set forth in this provision rather than in court include, but are not limited to, embezzlement/conversion, disclosure of trade secrets, breach of confidentiality agreement, wage and benefit claims; contract claims; personal injury claims; claims for equitable relief; tort claims, such as claims for wrongful termination and defamation; discrimination and harassment claims including, without limitation, those claims brought under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the American with Disabilities Act, the California Fair Employment and Housing Act, the Family Medical Leave Act, the California Family Rights Act, the Employment Retirement Income Securities Act of 1974; and any other employment-related claims of any type unless otherwise stated herein. This Agreement applies to all claims that the Company may have against Employee, as well as all claims that Employee may have against the Company, including its owners, directors, officers, employees, managers, members, agents, and parties affiliated with its employee benefit and health plans, past and present and each of them.

b. <u>Law Governing Arbitration Provision</u>. Employee and the Company agree that this provision and any arbitration under this provision shall be governed by the Federal Arbitration Act ("FAA"), and if applicable, shall also be governed by California Code of Civil Procedure sections 1280, *et seq.* (including without limitation section 1283.05 and its mandatory and permissive rights to discovery).

c. <u>Procedural Rules Governing Arbitration Process</u>. The arbitration process shall be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures (the "<u>JAMS Rules</u>").

The JAMS Rules are available from Human Resources and may be obtained online free of charge at http://www.jamsadr.com/rules-employment-arbitration/.  Any changes to the JAMS Rules may be updated from time to time, but the parties agree to us those rules in effect at the time that arbitration is commenced. The arbitration proceedings shall be held in the State of California in the County of Los Angeles, or in the State and County in which Employee works or worked for the Company, before a single, neutral arbitrator. The fees of the arbitrator and all other costs that are unique to the arbitration process shall be paid by the Company where required by law.  Otherwise, each party shall be solely responsible for paying his/her/its own costs for the arbitration, including but not limited to attorneys' fees and expert witness fees. However, if either party prevails on a claim which affords the prevailing party attorneys' fees pursuant to law, statute, or contract, the arbitrator may award reasonable attorneys' fees to the prevailing party.

The arbitrator shall have the authority to award any individual damages or relief authorized by law.  The award of the arbitrator shall be in writing and shall contain the arbitrator's factual findings, legal conclusions and reasons for the award.  The award, which shall be final and binding, may be entered as a judgment in any court with jurisdiction over either Employee or the Company.  As provided by law, the arbitrator's award shall expressly indicate whether pre-award or pre-judgment interest is awarded, its amount, and the timing for when such pre-award or pre-judgment interest begins to accrue.  All rules of evidence and all rules and rights of pleading shall apply in the arbitration proceeding.  The arbitrator shall have the authority to entertain discovery disputes and dispositive motions. The resolution of such disputes and motions shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any other basis in reaching his or her conclusions.

        d.  Initiating Arbitration.  Claims must be submitted to JAMS in accordance with the JAMS Rules for commencing an arbitration within the time period set forth in the applicable statute of limitations.  The arbitrator shall be chosen with the mutual agreement of the parties; provided, however, that if the parties are unable to agree on the selection of an arbitrator within two weeks of the submission of the claim, JAMS shall appoint a neutral arbitrator to preside over the arbitration.

        e.  Claims Excluded from Arbitration.  Either party may seek prohibitory provisional relief in Court pursuant to California Code of Civil Procedure Section 1281.8.  Moreover, the following actions shall not be subject to mandatory arbitration pursuant to this Mutual Agreement to Arbitrate: (i) claims within the jurisdictional limitation of small claims courts of the state where the claim is submitted for resolution; (ii) claims for workers' compensation benefits; (iii) claims for unemployment insurance compensation benefits; (iv) to the extent required by law, administrative claims or charges before applicable federal and state administrative agencies (such as California's Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, (iv) any unfair labor charge which is to be brought under the National Labor Relations Act; and (v) any claim that is not subject to arbitration by applicable law.

        f.  Individual Capacity Of Arbitration.  To the extent permitted by law and consistent with (e) above, Employee and the Company further agree that claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.  The arbitrator may not consolidate more than one person's/entity's claims, and may not otherwise preside over any form of a representative or class proceeding, except as permitted in (e) above.

        g.  Acknowledgement.  **BY VOLUNTARILY AGREEING TO THIS ARBITRATION PROVISION, THE COMPANY AND EMPLOYEE BOTH GIVE UP THEIR RIGHTS TO HAVE DISPUTES BETWEEN THEM HEARD BY A JURY OR RESOLVED IN ANY OTHER FORUM, INCLUDING COURT.**

11.    Interpretation.  Except as indicated in Paragraph 10(b), this Agreement and the attached Offer Letter shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California.  This Agreement and the attached Offer Letter shall be construed as a whole and in accordance with their fair meaning; captions are for convenience only and shall not be used in construing meaning.  Although this Agreement and the attached Offer Letter have been drafted by the Employer, the Parties agree that in any construction and/or interpretation made of this Agreement, the same shall not be construed against the Employer on the basis that the Employer was the drafter.  All pronouns and any variations thereof shall be deemed to refer to masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require.

12.    Severability.  In the event that any provision or any part of any provision of this Agreement shall be void or unenforceable for any reason whatsoever, then such provision shall be stricken and of no force and effect.  However, unless such stricken provision goes to the essence of the consideration bargained for by a party, the remaining provisions of this Agreement shall continue in full force and effect, and to the extent required, and shall be modified to preserve their validity.

13.    Integration.  This Agreement and the attached Offer Letter constitute and contain the entire agreement and understanding between the parties and supersede all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof.  Employer has made no promises to Employee other than those contained in this Agreement and the attached Offer Letter.  This Agreement and the attached Offer Letter may not be modified, or any provision waived, except by a signed written agreement of the affected parties.  In the event that there is a conflict between any term contained herein and any employee handbook or other document or policy provided to Employee, the terms of this Agreement shall govern unless otherwise agreed to by a signed writing of the Company's President or the Company's most senior executive, as applicable.

14.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute one and the same instrument.  Facsimile or the electronic transmission of a signature on this document shall be deemed an original.

IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by their duly authorized officers, as of the day and year first above written.

|  | JUSTIN VINEYARDS & WINERY LLC |
|---|---|
| Olivia Barajas<br>Olivia Barajas | By: _____<br>Julie Silver<br>Chief Financial Officer |

**EXHIBIT A**

## CALIFORNIA LABOR CODE SECTION 2870
## INVENTION ON OWN TIME – EXEMPTION FROM AGREEMENT

"(a)     Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of employee's rights in an invention to employee's employer shall not apply to an invention that the employee developed entirely on employee's own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)     Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)     Result from any work performed by the employee for the employer.

(b)     To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**EXHIBIT B**

**LIST OF PRIOR INVENTIONS**
**AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|