KRISTINA M. DIAZ (SBN 151566)
kristina.diaz@roll.com
LISA A. STILSON (SBN 196059)
lisa.stilson@roll.com
AMBER HENRY (SBN 247624)
Amber.Henry@roll.com
MATTHEW C. ONYETT (SBN 295419)
matthew.onyett@roll.com
LEAH JOHANNESSON (SBN 305206)
Leah.Johannesson@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for Defendants
JUSTIN VINEYARDS & WINERY LLC
THE WONDERFUL COMPANY LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>            Plaintiff,<br><br>and,<br><br>PATRICIA VERDUZCO, BLANCA VERDUZCO, OLIVIA BARAJAS, JOSEFINA FLORES DIAZ,<br><br>            Intervenor Plaintiffs,<br><br>    vs.<br><br>JUSTIN VINEYARDS & WINERY LLC, THE WONDERFUL COMPANY LLC, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:22-cv-06039 MRA-RAOx<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Notice of Motion and Motion; Separate Statement of Undisputed Facts; Declaration; and [Proposed] Order filed Concurrently Herewith]**<br><br>Date:      February 10, 2025<br>Time:      1:30 p.m.<br>Crtrm.:    10B<br><br>[Assigned to the Honorable Judge Monica Ramirez Almadani] |

{3488007.6}

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................ 3

III.   ARGUMENT ....................................................................................... 7

       A.   Summary Judgment Standard .................................................... 7

       B.   The EEOC Cannot Establish Claimants Catalina Alva and the
            Estate of Berenice Gomez Were Subject to a Sexually Hostile
            Work Environment ..................................................................... 8

            1.   Hostile Work Environment Standard ............................... 8

            2.   Catalina Alva's Allegations Are Insufficient to Support a
                 Claim of Hostile Work Environment ............................... 9

            3.   The EEOC Cannot Show Gomez was Subjected to a
                 Subjectively Hostile Work Environment ........................ 11

       C.   The EEOC Cannot Recover on Behalf of Julia Sachs as She
            Released Her Right to Recover Damages by Executing a Valid
            Severance Agreement ............................................................... 13

       D.   The EEOC's Claim of Retaliation on Behalf of John Torres Fails ...... 15

            1.   Elements of Retaliation Cause of Action ....................... 15

            2.   Torres Cannot Establish a Prima Facie Case of Retaliation ....... 16

                 (a)   EEOC Cannot Show That Torres Engaged in
                       Protected Activity ............................................... 16

                 (b)   EEOC Cannot Establish a Causal Link Between
                       Torres' Protected Activity and His Termination .............. 17

            3.   Torres Was Terminated for a Legitimate Business Purpose ...... 17

IV.    CONCLUSION .................................................................................. 18

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Page**

<u>CASES</u>

*Brooks v. City of San Mateo*
    229 F.3d 917 (9th Cir. 2000) ................................................................. 10

*Celotex Corp. v. Catrett*
    477 US 317 (1986) ................................................................................... 7

*Clark Cty. Sch. Dist. v. Breeden*
    532 U.S. 268 (2001) ............................................................................... 10

*Davis v. Team Elec. Co.*
    520 F.3d 1080 (9th Cir. 2008) ................................................................. 9

*Ellison v. Brady*
    924 F.2d 872 (9th Cir. 1991) ................................................................. 10

*Faragher v. City of Boca Raton*
    524 U.S. 775 (1998) ..................................................................... 8, 9, 10

*Harris v. Forklift Sys., Inc.*
    510 U.S. 17 (1993) ................................................................................... 8

*Jenott v. St. Alphonsus Reg'l Med. Ctr.*
    2009 WL 5200524, 2009 U.S. Dist. LEXIS 119618, (D. Idaho Dec. 23, 2009) ..................................................................................................... 16

*Kortan v. Cal. Youth Auth.*
    217 F.3d 1104 (9th Cir. 2000) ............................................................... 11

*Kurtz v. Caesars Entm't, Inc.*
    266 Fed. Appx. 676 (9th Cir. 2008) ...................................................... 16

*Manatt v. Bank of America*
    339 F.3d 792 (9th Cir. 2003) ........................................................... 8, 18

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ............................................................................... 15

*McGinest v. GTE Serv. Corp.*
    360 F.3d 1103 (9th Cir. 2004) ........................................................... 9, 11

*Pardi v. Kaiser Foundation Hospitals*
    389 F.3d 840 (9th Cir. 2004) ......................................................... 14, 15

*Savino v. C. P. Hall Co.*
    199 F.3d 925 (7th Cir. 1999) ................................................................... 8

*Stegall v. Citadel Broadcasting Co.*
   350 F.3d 1061 (9th Cir. 2003) .................................................................. 16, 17

*Stroman v. West Coast Grocery Co.*
   884 F.2d 458 (9th Cir. 1989) .................................................................. 14, 15

*Vasquez v. Cty. of Los Angeles*
   349 F.3d 634 (9th Cir. 2003) ........................................................................ 9

*Villarruel v. Gary Cmty. Sch. Corp.*
   28 Fed. Appx. 564, 2002 U.S. App. LEXIS 2514 (7th Cir. Feb. 14,
   2002) .............................................................................................................. 8

*Yartzoff v. Thomas*
   809 F.2d 1371 (9th Cir. 1987) ..................................................................... 17

**STATUTES**

Evid. Code, § 1200 .......................................................................................... 11

Evid. Code, § 1201 .......................................................................................... 12

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its First Amended Complaint, the Equal Employment Opportunity Commission ("EEOC") alleges that Defendants JUSTIN Vineyards & Winery LLC ("JUSTIN") and The Wonderful Company LLC ("TWC") unlawfully subjected Charging Party Patricia Verduzco Avalos and a class of female employees to sexual harassment, including a hostile work environment based on sex (female), constructive discharge, and/or retaliation for opposing unlawful employment practices, in violation of Title VII. (First Amended Complaint, "Nature of Action," ¶¶ 7-13, ECF No. 93.) The EEOC did not identify any of the alleged class members until March 13, 2023, when it served its initial disclosures. Additional claimants were identified thereafter, with the final claimant being added in May 2024.

While the EEOC calls this a class action, functionally it is 14 separate claims brought by the EEOC on behalf of 14 different individuals. By rule, the EEOC is not required to comply with Federal Rule of Civil Procedure 23, meaning that the EEOC was never required, among the other Rule 23 requirements, to show commonality or typicality. These individuals do not all present common claims and there is no suggestion that there experience was typical of any other employee. Instead, here, there are 14 claims based on—in some cases—extremely different facts.[1] The relevant time period reaches from 2017 to present; as a result, many of these class members did not actually work at the same time, or locations, with the same coworkers or under the same management. Each has their own story and their own set of allegations they allege support the EEOC's case. Given the foregoing, while there is some overlap between different groupings of claimants, their claims must be

---

[1] The EEOC has not alleged that these claimants are tied together by a pattern or practice. In fact, when meeting and conferring for this motion, counsel for the EEOC disclaimed any such theory. Declaration of Matthew C. Onyett in Support of Defendants' Motion for Partial Summary Judgment ("Onyett Decl."), ¶ 2.

treated and reviewed as individual cases. Specifically, four of these individuals cannot set forth an actionable claim as a matter of law or fact, and, therefore, summary judgment should be granted in favor of Defendants, removing them from this lawsuit.

First, EEOC cannot establish that at least two of the claimants were subjected to a hostile work environment as a matter of law. Even if the Court were to consider all alleged incidents of harassment as described in the employees' depositions, the undisputed facts as to at least two former employees fail to demonstrate a hostile work environment under Title VII. Specifically:

- The conduct alleged by Catalina Alva does not rise to the level of being so severe or pervasive as to alter the terms and conditions of her employment.
- With respect to Berenice Gomez, there is no admissible evidence to establish the subjective element of a hostile work environment.

As such, the EEOC's claims on behalf of Alva and Gomez should be dismissed.

Additionally, former employee Julia Sachs signed a severance agreement after the alleged harassment occurred, releasing JUSTIN from all claims, including those arising under Title VII. This agreement precludes Sachs from seeking damages. As such, the EEOC's claim related to Sachs should also be dismissed.

Finally, the EEOC cannot establish a prima facie case for retaliation on behalf of former employee, John Torres. Torres did not engage in any protected activity under Title VII and there is no causal connection between any protected activity and his termination for his admitted drinking on the job in violation of company policy. Moreover, even if he had engaged in any protected activity, his termination was based on legitimate business reasons and there is no evidence upon which the EEOC could establish that reason was pretextual. For these reasons, the EEOC's retaliation claim regarding Torres should be dismissed.

## II.    FACTUAL BACKGROUND

JUSTIN is widely recognized for its expertise in wine production and sales. It operates two distinct winemaking production facilities in Paso Robles: the Wisteria facility, which is located near downtown Paso Robles and handles both production and bottling, and Chimney Rock, which specializes in crafting premium wines. In addition to its production operations, JUSTIN operates a hospitality department, which includes the JUST Inn, two tasting rooms in Paso Robles, and The Restaurant at JUSTIN.

Since its acquisition by The Wonderful Company LLC ("TWC") in December 2010, JUSTIN has maintained a published written policy prohibiting sexual harassment. This policy applies to and protects employees, applicants, customers, contractors, vendors, and participants at meetings and events held by JUSTIN. JUSTIN's sexual harassment policy includes a comprehensive reporting procedure, whereby employees are encouraged to report incidents of disrespectful or bullying behavior. Specifically, employees are urged to address such behavior directly with the individual involved, provided they feel comfortable doing so. In the event that the behavior persists or the employee is not comfortable addressing it directly, they are instructed to report the incident verbally or in writing to a manager, supervisor, human resources, or via JUSTIN's Ethics Hotline. Alternatively, employees can report anonymously via the EthicsPoint website.

Furthermore, in addition to the above internal reporting channels, employees are advised that they may report any discriminatory and/or harassing conduct to the U.S. Equal Employment Opportunity Commission ("EEOC") or the relevant local or state agency responsible for handling such complaints. Both the sexual harassment policy and complaint resolution procedure are included in JUSTIN's employee handbook. JUSTIN also posts an anonymous hotline number, a 1-800 helpline, and a copy of the EEOC's sexual harassment posters in work areas.

**Claimants at Issue in this Motion**

**1. Catalina Alva**

Catalina Alva has been identified by the EEOC as a claimant in this lawsuit. [Separate Statement of Undisputed Material Facts, filed concurrently, ("UMF") 1.] Alva worked primarily in the kitchen of JUSTIN's Downtown Tasting Room ("DTR") from approximately August 2018 to February 2020. In this litigation, Alva asserts only claims of a sexually hostile work environment against Defendants. [UMF 2.] She testified that during her employment her only complaints of alleged harassment involved one of her former male co-workers. [UMF 3.] Alva and this individual worked together in the DTR kitchen. The male co-worker did not hold a supervisory or managerial position over Alva. Alva admits that this co-worker did not have any such authority over her.

Alva alleges two incidents of harassment involving the same male co-worker. [*Id.*] The first incident allegedly occurred while she was preparing a cheese board, during which Alva claims the male co-worker rubbed her hands for approximately two to three minutes. [UMF 4.] According to Alva, she initially did not notice the co-worker's actions and only became aware of them after two or three minutes. She states that she did not pay significant attention to the contact, and when she withdrew her hands, her co-worker did not prevent her from doing so or say anything in response. Alva did not report this incident to Human Resources, a supervisor, or confront her co-worker directly. [UMF 5.]

The second incident allegedly occurred when Alva entered the restroom in the DTR facility. While Alva was in one of the closed off restroom stalls, she claims the lights in the bathroom turned off. [UMF 6.] Although Alva only saw the shoes of the person entering the restroom, she believes the same male co-worker entered the restroom, turned off the lights, and immediately left without saying anything. [UMF 7.] There is not any admissible evidence in the record this male co-worker even knew that Alva was in one of the closed bathroom stalls when the lights were turned

off. After this incident, Alva did not experience similar occurrences and reported no further issues with this co-worker.

While employed by JUSTIN, Alva never experienced any other instances of alleged sexual harassment other than the two incidents outlined above. [UMF 8.] Alva also never witnessed any instances of sexual harassment against any other JUSTIN employee. [UMF 9.]

## 2. Estate of Berenice Gomez

The Estate of Berenice Gomez ("Estate") was identified as a claimant in this lawsuit by the EEOC. [UMF 11.] Ms. Gomez ("Gomez") primarily worked in a support staff position at The Restaurant at JUSTIN from approximately February 2022 to May 2024. Tragically, Gomez passed away on May 27, 2024.

The EEOC has alleged Ms. Gomez experienced a hostile work environment and harassment based on her sex. There is no admissible evidence in the record, however, that Ms. Gomez suffered any subjective harm from the alleged harassment as required by law. Indeed, the undisputed facts demonstrate that as soon as Ms. Gomez reported a concern to JUSTIN about a male co-worker, he was immediately suspended and ultimately terminated. Specifically, Gomez claimed that a male co-worker followed her to her car after work. [UMF 12.] She also learned from a separate coworker that this male co-worker had commented on a Facebook post on another employee's account, asking, "Isn't Berniece the best soul we have?" Gomez complained about this conduct to Vernon Wright ("Wright") on May 5, 2023. [UMF 13.] Following that complaint, she spoke to Danny Hanson in Human Resources on May 6, 2023, recounting the above allegations regarding the male co-worker. [UMF 14.] The male co-worker did not work with Gomez again after her complaint to Wright on May 5, 2023. [UMF 15.] The male co-worker was suspended on May 6, 2023, and ultimately terminated on May 16, 2023 without ever returning to work at JUSTIN. [UMF 16.] Ms. Gomez did not make any further complaints regarding a hostile work environment or sexual harassment after this time. Ms. Gomez was

never identified as a claimant in this lawsuit while alive. It was only after her death
that the EEOC identified her Estate as a claimant.

### 3. Julia Sachs

The EEOC identified Julia Sachs as a claimant in this lawsuit. [UMF 18.]
Sachs initially worked as a concierge and was later promoted to Events Coordinator
for the JUST Inn and The Restaurant at JUSTIN, from approximately September
2021 to August 2022. [UMF 19.]

Due to a reorganization, Sachs' position was eliminated, and JUSTIN offered
her a severance agreement. [UMF 20.] At that time, JUSTIN was unaware Sachs
contended she had been subjected to sexual harassment while working at JUSTIN.
[UMF 22.] In fact, Sachs testified she never reported to anyone at JUSTIN that she
had allegedly experienced any sexual harassment. Sachs stated that the severance
agreement was important and she had received the consideration set forth in the
agreement. She also testified she was aware she could consult with an attorney
before signing and understood that by signing the severance agreement, she was
receiving payment in exchange for releasing claims. The agreement expressly states
Sachs cannot recover any monetary relief or damages for any claim related to her
employment, including in any EEOC lawsuits. [UMF 24.] There is no evidence in
the record that Sachs entered into the severance agreement involuntarily. [UMF 23.]

### 4. John Torres

John Torres ("Torres") has been identified as a claimant in this lawsuit by the
EEOC. [UMF 25.] Torres worked at The Restaurant at JUSTIN as a wine guide
from approximately April 2022 to September 2023. [UMF 26.] In this litigation,
Torres alleges he experienced retaliation from JUSTIN for attempting to help
Gomez report a sexual harassment incident involving a male co-worker. [UMF 27.]
However, Gomez had already reported the incident to Human Resources a week
earlier. [UMF 28.] Furthermore, the male co-worker had already been suspended
when Torres asked to speak with Human Resources on Gomez's behalf and was

1 ultimately terminated. [UMF 29.]

2     Over four months later, in September 2023, Torres was terminated for

3 violating company policies, including the Wine Evaluation Policy, Drug-Free

4 Workplace Policy, and Personal Misconduct Policy, all of which strictly prohibit

5 employees from drinking while on duty. [UMF 30.] The Wine Evaluation Policy

6 was reiterated in a meeting in May 2023, where employees were advised that

7 violations of the policy would lead to termination. [UMF 31.] Torres acknowledged

8 he re-signed the policy at this time. [UMF 32.] On September 11, 2023, Torres

9 admitted to drinking alcohol while on duty. [UMF 33.] Torres and another

10 employee, who had brought the alcohol to the property, were both terminated due to

11 this violation. [UMF 34.]

12 **III.    ARGUMENT**

13

14     **A.    Summary Judgment Standard**

15     The Court should grant summary judgment if there are no genuine issues of

16 material fact and the moving party is entitled to judgment as a matter of law. FRCP

17 56(c). If the moving party shows there are no genuine issues of material fact, the

18 non-moving party must go beyond the pleadings and designate facts showing an

19 issue for trial. *Celotex Corp. v. Catrett,* 477 US 317, 322-23 (1986). If the non-

20 moving party fails to make a showing sufficient to establish the existence of an

21 element essential to that party's case, and on which that party will bear the burden of

22 proof at trial, "the moving party is entitled to judgment as a matter of law." *Id.* at

23 323. As set forth below, the EEOC cannot establish that Alva and Gomez were

24 subjected to a hostile work environment as a matter of law. Further, Sachs released

25 her right to recover damages from JUSTIN by entering into a severance agreement,

26 and therefore the EEOC cannot, as a matter of law, obtain damages on her behalf.

27 Finally, Torres cannot establish a claim for retaliation as a matter law or fact.

28 Therefore, JUSTIN is entitled to summary judgment as to these employees' claims.

## B. The EEOC Cannot Establish Claimants Catalina Alva and the Estate of Berenice Gomez Were Subject to a Sexually Hostile Work Environment

### 1. Hostile Work Environment Standard

Title VII is not a "general civility code" and is not intended to provide redress for "the ordinary tribulations of the workplace" including the sporadic use of abusive language, occasional teasing and gender related jokes. *Villarruel v. Gary Cmty. Sch. Corp.*, 28 Fed. Appx. 564, 567-568, 2002 U.S. App. LEXIS 2514 (7th Cir. Feb. 14, 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Savino v. C. P. Hall Co.,* 199 F.3d 925, 933 (7th Cir. 1999) ("The sporadic use of abusive language, gender related jokes, and occasional teasing are fairly commonplace in some employment settings and do not amount to actionable harassment.").

To establish a Title VII hostile work environment claim, each plaintiff must prove (1) he/she/they were subjected to unwelcome verbal or physical conduct because of his/her sex, and (2) the conduct was sufficiently severe or pervasive to alter the conditions of his/her/their employment and create an abusive work environment. *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003). To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts look at the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Occasional or isolated incidents are not actionable; rather, a plaintiff must show a concerted pattern of harassment of a repeated, routine, or generalized nature. *Faragher*, 524 U.S. at 788; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Specifically, the plaintiff must show he/she/they perceived the

working environment as abusive or hostile, ***and*** that a reasonable person with her/his/their protected characteristic, in the same circumstances, would also find the environment abusive or hostile. *See id.* Additionally, a plaintiff must demonstrate the employer failed to take sufficient remedial and disciplinary action. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008).

### 2. Catalina Alva's Allegations Are Insufficient to Support a Claim of Hostile Work Environment

The EEOC cannot establish a claim of hostile work environment on behalf of Alva. Alva alleges two isolated incidents to support her claim of sexual harassment. Neither incident, as described by Alva, constitutes sexual harassment under the law as neither meets the severe or pervasive standard required to establish a hostile work environment claim.

The first incident Alva described involved a male co-worker rubbing her hands while she was preparing a cheese board, with the contact allegedly lasting two to three minutes. According to her testimony, she initially did not notice the contact, withdrew her hands without resistance, and described no accompanying comments or suggestive behavior. (Ex. B, 71:16-17; 72:10-12; 73:2-6; 98:19-22.) Even if this incident occurred as Alva described, it fails to support a claim for sexual harassment. Courts require conduct to be explicitly or implicitly sexual to constitute actionable harassment. *See Faragher*, 524 U.S. at 788. Ambiguous physical interactions, absent evidence of sexual intent, do not meet this standard.

Further, this was an isolated incident, which, under Ninth Circuit precedent, cannot meet the severe or pervasive standard unless extremely egregious. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000). Alva's testimony suggests she did not initially perceive the interaction as significant or offensive, undermining any claim of subjective hostility. (Ex. B, 71:16-17; 72:10-12; 73:2-6; 98:19-22.) Objectively, the conduct described would not be considered severe or abusive to a reasonable person

under similar circumstances. *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). Finally, Alva did not report the incident and it was not witnessed by any manager or supervisor, depriving JUSTIN of an opportunity to address the conduct, as required for Title VII liability.

The second incident involves Alva's claim that the same male co-worker, who she did not like, entered the restroom while she was in a closed bathroom stall, turned off the lights, and immediately exited. Alva did not see the male co-worker enter the restroom, nor did she observe him while inside. She reported the incident to Human Resources the following day and experienced no similar occurrences after her report.

There is no evidence in the record to suggest the male co-worker's alleged action was motivated by sexual intent or that it constituted unwelcome conduct of a sexual nature. Indeed, there is no admissible evidence in the record that the male co-worker was even aware Alva was inside a restroom stall at that time. Further, even if intentional, turning off a restroom light, while inconvenient and possibly frustrating, does not inherently have sexual connotations. The conduct must be unmistakably sexual to support a harassment claim. The Supreme Court has rejected claims where the alleged conduct can be reasonably attributed to non-discriminatory or non-sexual factors. *Faragher*, 524 U.S. at 788. Without admissible evidence that the male co-worker's action was intentional and sexually motivated, EEOC cannot meet its burden as to Alva's claims.

Further, this alleged incident was a single occurrence during Alva's entire employment, and there is no evidence of similar incidents involving Alva or any other employees. Isolated incidents that are neither severe nor pervasive cannot create a hostile work environment. *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000).

Finally, Alva's testimony about her co-worker's actions and the two incidents described shows she did not perceive the behavior or remarks as creating an abusive

environment or materially altering the conditions of her employment. Even taking the two incidents together, the conduct does not rise to the level of severe or pervasive harassment required by law. The EEOC cannot show that a reasonable person in Alva's position would have perceived her work environment to be hostile based solely on these events. Moreover, Alva worked at a different location than the other claimants. As a result, Alva's claims fail to meet both the subjective and objective standards for establishing a hostile work environment, and there is no actionable harassment in her claims in the first instance.

### 3.    The EEOC Cannot Show Gomez was Subjected to a Subjectively Hostile Work Environment

The EEOC cannot establish the subjective component of Gomez's hostile work environment claim, which requires the claimant to have perceived the working environment to be abusive or hostile. *McGinest*, 360 F.3d at 1113. There is no admissible evidence in the record to support this subjective element. The EEOC may try and rely upon Gomez's unauthenticated journal entries and the testimony of others. Such evidence, however, is inadmissible hearsay, and lacks foundation. Even if admissible, the statements fail to establish Gomez perceived her workplace as "abusive or hostile."

Specifically, it is hornbook law that an out-of-court statement offered to prove the truth of the matter constitutes hearsay and is inadmissible unless an applicable exception applies. Evid. Code, § 1200. Where a statement involves multiple levels of hearsay, each level must satisfy a hearsay exception for the entire statement to be admissible. Evid. Code, § 1201. In this case, all of the evidence offered to support Gomez's claims is hearsay. Her alleged journal cannot be authenticated as it is unknown when the statements were written in relation to the events set forth therein, under what circumstances Gomez allegedly wrote the entries, or if Gomez actually wrote the statements herself, and therefore, cannot be admitted under any hearsay exception. Additionally, the accounts of other claimants, such as Torres, who did not

1  personally witness the alleged harassment but rather only heard about it from

2  Gomez, are also inadmissible hearsay.

3      This hearsay issue directly impacts the subjective component of the hostile

4  work environment claim. To succeed on a hostile work environment claim, the

5  alleged victim must subjectively feel the conduct created an abusive work

6  environment and altered the conditions of her employment. Here, there is no

7  evidence of either. Without admissible evidence establishing Gomez – who never

8  chose to be included as a claimant in this litigation – subjectively perceived the

9  conduct as altering the conditions of her employment, the EEOC cannot meet is

10  burden of proof as to her.

11      Even if the EEOC could overcome the hearsay issues neither Gomez's alleged

12  journal, the investigation notes or the testimony of others demonstrate Gomez

13  subjectively felt the work environment was abusive. Based on the notes from the

14  investigation, Gomez only stated that her male co-worker's behavior made her feel

15  "uncomfortable." Further, her journal does not include any entries which describe

16  her mental state or the work environment overall. Simply put, there is no evidence

17  upon which the EEOC can claim that Gomez subjectively viewed her work

18  environment as one that was sufficiently hostile as a result of sexually harassing

19  conduct.

20      Furthermore, any comments by Gomez about how she perceived her work

21  environment come from before JUSTIN took action in response to her complaints.

22  After speaking with Human Resources, Gomez never worked with the male co-

23  worker again. In fact, once Human Resources received her complaint in May 2023,

24  the male co-worker was immediately suspended and ultimately terminated. He never

25  returned to work. In other words, JUSTIN responded quickly and appropriately,

26  further undermining the claim of a hostile work environment or any alleged

27  evidence the EEOC attempts to present about Gomez's mental state since this

28  termination necessarily would have impacted how she perceived her work

environment.

## C. The EEOC Cannot Recover on Behalf of Julia Sachs as She Released Her Right to Recover Damages by Executing a Valid Severance Agreement

The EEOC's claims on behalf of Sachs are in contravention of a fully executed, valid, and enforceable Severance Agreement which bars her claims and her ability to recover damages. [UMF 21-24.] The Severance Agreement Sachs signed explicitly acknowledges that she had not made any claims of sexual harassment arising during her employment at JUSTIN:

> Notwithstanding the general applicability of the foregoing release, employee acknowledges that he/she has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments set forth as consideration in this agreement are related to sexual harassment or sexual abuse. [Ex. F, paragraph 1.]

Indeed, Sachs admitted she never reported any incidents of sexual harassment or a hostile work environment to JUSTIN at any point in time during or after her employment.

Paragraph 9 of the Severance Agreement further provides Sachs not only waived her ability to bring a claim herself, but she waived the ability to "recover money in connection with any agency charge or agency or judicial decision":

> Notwithstanding any other provisions, this Agreement does not prohibit or restrict Employee, the Employer, or the other Releasees from: (i) discussing or disclosing information about or regarding unlawful acts in the workplace, such as sexual harassment or discrimination or any other conduct that Employee has reason to believe is unlawful; (ii) initiating communications directly with, cooperating with, providing relevant information, or otherwise assisting in an investigation by… (B) the EEOC or any other governmental

authority with responsibility for the administration of fair employment practices laws regarding a possible violation of such laws, as compelled or requested by lawful process… ***Employee is, however, waiving any right to recover money in connection with any agency charge or agency or judicial decision***, including class or collective action rulings, other than bounty money properly awarded by the SEC…" (emphasis added).

This release is valid and enforceable under well-established case law. As such, the EEOC cannot show the existence of a triable issue of fact as to the validity and scope of the release Sachs signed, and absent such an issue of fact the release bars her suit as a matter of law. Specifically, in *Stroman v. West Coast Grocery Co.*, 884 F.2d 458 (9th Cir. 1989), the Ninth Circuit held that a release of Title VII claims is valid if it is "voluntary, deliberate, and informed." Similarly, in *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840 (9th Cir. 2004), the Ninth Circuit upheld the dismissal of a claim where, as here, the employee signed a release of claims in a severance agreement and there was no evidence that the agreement was obtained through fraud, duress, or lack of informed consent. Just as in *Pardi* and *Stroman*, Sachs' Severance Agreement should be enforced as she voluntarily signed it and explicitly acknowledged she had no claims of sexual harassment at the time.

Here, Sachs had the opportunity to consult with an attorney before signing the Severance Agreement, as set forth in Paragraph 3 of the agreement, but voluntarily chose not to. Nor is there any evidence in the record that her choice to sign the Severance Agreement was anything other than voluntary. There is zero evidence of coercion, fraud, improper influence or duress as required under *Stroman or Pardi.*

Sachs' Severance Agreement properly allowed Sachs to participate in and assist with the EEOC's investigation in this matter but she contractually waived her right to recover any damages as a result of that participation. Further, while the EEOC is the plaintiff, it is bringing a claim "on behalf of Sachs." As such, any damages recovered by the EEOC as a result of this litigation would be directed to

Sachs as the claimant, not the EEOC itself. Since Sachs is not permitted to recover any money, however, the EEOC cannot step in to recover damages on her behalf. Consequently, the EEOC is barred from asserting any monetary damages on her behalf.

### D.    The EEOC's Claim of Retaliation on Behalf of John Torres Fails

EEOC asserts JUSTIN's termination of Torres' employment constitutes retaliation in violation of Title VII. However, the EEOC cannot set forth a prima facie case of retaliation since Torres did not engage in any protected activity because he testified that the meeting where he planned to make a complaint on another employee's behalf did not actually happen. Even if Torres did engage in protected activity, the EEOC cannot establish any causal connection between that activity and Torres' termination some four months later. If the EEOC could establish a prima facie case, Torres' claim still must fail as JUSTIN terminated Torres for entirely legitimate, non-discriminatory reasons unrelated to any harassment complaints.

### 1.    Elements of Retaliation Cause of Action

To establish a prima facie case of retaliation, a plaintiff must demonstrate three elements: (1) they engaged in protected activity; (2) they suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a prima facie case of retaliation, then the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for the actions taken, and if the defendant does so, the plaintiff must then show that the defendant's proffered reason is a pretext for retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The EEOC's case cannot survive

summary judgment because it cannot establish these elements.

### 2. Torres Cannot Establish a Prima Facie Case of Retaliation

#### (a) EEOC Cannot Show That Torres Engaged in Protected Activity

Torres contends he engaged in protected activity by ***attempting*** to speak on behalf of Gomez, who had already reported the harassment described above to Human Resources prior to Torres' involvement. However, Torres expressly testified he never actually spoke with Human Resources or made a report about the behavior he allegedly heard from Gomez. Torres' ***desire*** to speak on Gomez's behalf does not rise to the level of protected activity under retaliation law.

Rather, protected activity generally involves formally opposing unlawful discrimination or harassment, such as filing a complaint or testifying in proceedings related to such claims. *Kurtz v. Caesars Entm't, Inc.,* 266 Fed. Appx. 676, 677 (9th Cir. 2008) (affirming district court's finding of no protected activity where plaintiff argued that "her supervisor mistakenly perceived her to have engaged in protected activity"); *Jenott v. St. Alphonsus Reg'l Med. Ctr.,* 2009 WL 5200524, at *5, 2009 U.S. Dist. LEXIS 119618, at *15-16 (D. Idaho Dec. 23, 2009) (noting the Ninth Circuit has not expressly endorsed the "perception theory"). Gomez had already reported the harassment to Human Resources, and by the time Torres attempted to speak on her behalf, the issue had already been addressed internally (the co-worker was terminated). Torres' intended actions—offering to speak about Gomez's complaint—were not part of any formal grievance process and do not constitute a legal form of opposition to discrimination. Moreover, Torres himself testified that the meeting he requested with Justin's HR ended before it started and that he never actually reported anything. Therefore, Torres' conduct does not meet the necessary standard for protected activity, and his attempt to intervene does not qualify as opposition to unlawful discrimination.

**(b)**    **EEOC Cannot Establish a Causal Link Between Torres' Protected Activity and His Termination**

Even if Torres had engaged in protected activity and suffered an adverse employment action, the EEOC cannot demonstrate a causal link between the two. The timing between Torres' attempt to speak on behalf of Gomez and his termination was more than four months apart. Mere temporal proximity, particularly after several months, however, is insufficient to establish causality. *Stegall*, 350 F.3d at 1065 (finding no causal link when there was a gap of several months between protected activity and adverse action); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (mere temporal proximity is not enough to establish a causal link for retaliation claims, especially when the protected activity and adverse action are not closely connected in time).

Here, Torres' termination occurred over fourth months after Gomez's complaint, making the temporal proximity insufficient to establish a causal link. As such, the burden shifts back to the EEOC to establish causality through specific facts, which it cannot do as there is no evidence that any member of JUSTIN's management or Human Resources had any issue with Torres' attempted reporting of another co-worker's behavior.

**3.**    **Torres Was Terminated for a Legitimate Business Purpose**

Even if the EEOC could establish a prima facie case of retaliation, Torres' claim still must fail as a matter of law as it is undisputed he was terminated for a legitimate business purpose. Torres' termination was the result of his violation of company policies, specifically the Wine Evaluation Policy, Drug-Free Workplace Policy, and Personal Misconduct Policy, which prohibit drinking alcohol while on duty. His termination for this violation was entirely unrelated to any supposed protected activity. An adverse employment action is defined as one that would discourage a reasonable employee from engaging in protected activity. However, an employer's decision to terminate an employee for violating well-established policies

1  is not retaliation, especially where there is no direct link to any protected activity.

2       While the drinking policies historically were not aggressively enforced by

3  JUSTIN, it is undisputed that in May 2023 it was made clear to hospitality

4  employees, including Torres, that the policies would be strictly enforced moving

5  forward. At that time, JUSTIN's management held a meeting after a prior incident

6  of employees drinking at work. During the meeting, management went over the

7  policy with employees, explained the policy would be strictly enforced moving

8  forward, and had each employee sign a new copy of the wine-evaluation policy

9  which explained when and how employees could drink while at work. Torres

10  attended this meeting and signed the policy. Despite this meeting and re-signing the

11  policy, Torres admitted to drinking alcohol while on the clock in September 2023.

12  Due to this incident, he, along with another worker who had brought the alcohol into

13  work that day, were fired.

14       The foregoing evidence clearly demonstrates Torres was terminated for a

15  legitimate, non-retaliatory reason—violating company policies—and not because he

16  intended to speak on behalf of Gomez. This constitutes a legitimate business

17  decision and does not qualify as an adverse employment action for purposes of a

18  retaliation claim. As the Ninth Circuit noted in *Manatt*, 339 F.3d at 800, after the

19  employer articulates a "legitimate, non-discriminatory reason for the adverse

20  employment action," the burden shifts back to the employee to establish pretext.

21  Here, the EEOC has no evidence upon which to show pretext. Therefore, Torres'

22  claim must fail as a matter of law.

23

24  **IV.  CONCLUSION**

25       Based on the undisputed material facts, primarily from the claimants' own

26  deposition testimony, the EEOC cannot establish a claim of hostile work

27  environment on behalf of Alva or Gomez, and Sachs' claim and right to recover any

28  damages is barred by her severance agreement. Nor can the EEOC establish a

retaliation claim for Torres as a matter of law. Defendants respectfully request

partial summary judgment in their favor as to these Claimants

DATED:  December 13, 2024          ROLL LAW GROUP PC


                              By:  _____/s/ Matthew C. Onyett_____
                                   Matthew C. Onyett
                                   Attorneys for Defendants
                                   JUSTIN VINEYARDS & WINERY LLC
                                   THE WONDERFUL COMPANY LLC

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT